THOMAS M. WYNNE, JR. *vs.* AMY T. CREIGLE.

No. 04-P-335.

Essex. January 4, 2005. - April 14, 2005.

Present: GRASSO, COWIN, & GRAHAM, JJ.

*"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government. *Statute,* Construction.

There was no abuse of discretion or other error of law in a judge's decision to grant a defendant's special motion to dismiss, pursuant to G. L. c. 231, § 59H (the "anti-SLAPP" statute), a lawsuit alleging that the defendant had defamed the plaintiff in articles in a local newspaper, where the defendant met her initial burden of showing that the plaintiff's action against her was based on protected petitioning activities alone and had no substantial basis other than or in addition to those activities, and where the plaintiff completely failed to demonstrate that the defendant's petitioning activities were devoid of any reasonable factual support. [251-255]

CIVIL ACTION commenced in the Superior Court Department on May 4, 2001.

A special motion to dismiss was heard by *Isaac Borenstein,* J., and motions for attorney's fees and costs and for relief from judgment were heard by *David Lowy,* J.

*Thomas R. Abdow* for the plaintiff.

*Dawn D. McDonald* for the defendant.

GRAHAM, J. In this appeal, we further consider the scope of petitioning activities protected by the "anti-SLAPP" law, G. L. c. 231, § 59H. The plaintiff, Thomas M. Wynne, Jr., formerly a firefighter for the town of Greenfield, was discharged by the town as the result of an investigation by the Greenfield fire chief into allegations that the plaintiff's behavior was affecting the morale and safe operations of the fire department. The plaintiff later commenced this Superior Court action alleging that the defendant Amy T. Creigle, the surviving spouse of a former Greenfield firefighter, made defamatory comments about

the plaintiff in a written statement to the Greenfield fire department and in articles in a Greenfield newspaper. He now appeals primarily from the allowance of her special motion to dismiss under G. L. c. 231, § 59H, challenging the judge's ruling that her statements reflected the exercise of her right of petition protected by the statute. We affirm.

*Background.* We summarize the undisputed factual and procedural background to the controversy.[1] The plaintiff was hired as a Greenfield firefighter in December of 1993. In the summer of 1995, he came to believe that Kenneth Creigle (Creigle), and several others who had been hired as firefighters before the plaintiff, had falsely identified Greenfield as their place of residence to take advantage of an in-town hiring preference. The plaintiff could have had greater seniority had Creigle and the others not been so employed.

In letters written in September and November of 1995 and January of 1996, the plaintiff, through his attorney, reported to the Department of Personnel Administration (DPA) that Creigle might have impermissibly claimed a residency preference. The letters indicated the plaintiff's concern about his "seniority and attendant benefits" and asked the DPA to investigate. On March 22, 1996, the DPA responded, stating that records from 1989 showed a Greenfield residency for Creigle. Nearly one year passed when, on March 11, 1997, the plaintiff's attorney requested guidance from the DPA as to remedial procedures with respect to the Creigle issue.

Subsequently, on May 28, 1997, the plaintiff's attorney sent a "presentment notice" to James MacKenzie, the fire chief of Greenfield, pursuant to G. L. c. 258, § 4. The notice stated that, in light of Creigle's actions, the plaintiff was presenting claims for negligence and for wrongful acts or omissions. He sent identical letters to the Greenfield board of selectmen, the Greenfield town manager, and the Executive Office of Administration and Finance. In the letters, the plaintiff questioned Creigle's entitlement to residency preference.

---

[1] We take the facts from the Superior Court judge's August 23, 2002, memorandum of decision and order on the defendant's special motion to dismiss, and from the pleadings and the record before the judge, including a United States magistrate judge's report and memorandum dated July 11, 2001.

Dissatisfied by the failure of MacKenzie and the others to respond to his letters, the plaintiff filed a complaint against Creigle in the Greenfield Division of the District Court Department on September 11, 1997. Thereafter, coworkers and management began to treat the plaintiff differently. On October 22, 1997, MacKenzie transferred Creigle from one firefighter grouping to another within the department.

On January 28, 1998, Creigle committed suicide.[2] Immediately after Creigle's death, the defendant requested that the plaintiff not attend any services. The defendant claimed that her husband's suicide followed his harassment by the plaintiff both at and outside of work. Sometime between Creigle's death and August 7, 1998, the defendant sought legislation providing for payment of death benefits to her as the widow of a firefighter.[3]

The following month, MacKenzie held a staff meeting in which he discussed allegations by the plaintiff of being harassed by other firefighters, and ordered his officers to stop any harassment. He also sent two memoranda instructing personnel to conduct themselves professionally with regard to the plaintiff.

On February 23, 1998, deputy fire chief Hormidas Lively sent MacKenzie a memorandum reporting that the plaintiff had left the fire station in his pickup truck at such a rapid speed that his tires squealed, possibly endangering civilians. Lively also expressed concern for the plaintiff's ability to operate emergency equipment and recommended that he be assigned to a nondriving position. On February 27, 1998, as a result of Lively's memorandum, MacKenzie reprimanded the plaintiff.

On April 11, 1998, a firefighter sent a memorandum to MacKenzie reporting an incident in which the plaintiff allegedly had operated a fire engine at an unsafe speed in responding to a call from a nursing home and failed to obey an order to remain

---

[2]On April 15, 1998, the plaintiff's Greenfield District Court lawsuit against Creigle was dismissed. The causes of action alleged in the complaint did not survive Creigle's death.

[3]On July 28, 1998, the Legislature approved "[a]n Act directing the Greenfield retirement board to pay a certain retirement benefit to the surviving spouse of firefighter Kenneth J. Creigle." St. 1998, c. 253. On August 7, 1998, the Governor signed the act into law, which, "for the purpose of promoting the public good," *ibid.*, provided the defendant with an accidental death benefit under G. L. c. 32, § 9.

with the vehicle while others went into the nursing home. A few days later, another firefighter reported to MacKenzie that the plaintiff left a ladder truck in an "unstartable" condition. These reported actions raised morale and safety concerns regarding the plaintiff. MacKenzie, on May 1, 1998, informed the plaintiff that he was being reassigned to the fire prevention, fire alarm division, under the supervision of assistant fire chief George Herzig, while the department was investigating the allegations of misconduct. MacKenzie assigned Herzig to conduct the investigation.

On May 20, 1998, Herzig completed his investigation. He had taken statements from fifteen firefighters (half of the department), the plaintiff, and the defendant. The firefighters unanimously felt that the plaintiff was causing severe stress in the department and should be fired. Their statements described the plaintiff as an angry man who had harassed the Creigles on numerous occasions. They further indicated that many of them did not feel comfortable working with him.

In her own written statement of May 15, 1998, submitted in connection with the investigation, the defendant indicated that she and her husband had been harassed by the plaintiff. She stated that copies of the plaintiff's civil complaint had been taped to her husband's car window; that the plaintiff would sit next to him in the watch room to intimidate him and start a fight; that the plaintiff would tease him about his new truck, implying it had been bought with money the plaintiff would get in his lawsuit; that the Creigles would continually receive copies of the lawsuit papers in the mail; that the plaintiff often made prank telephone calls to their home; that the plaintiff would drive into their driveway at night; and that on one occasion, the plaintiff, knowing the Creigles needed money, told the defendant to "come on over here," implying (in her mind) that he would pay her for sexual favors.

On June 15, 1998, a departmental hearing was held regarding the disciplinary charges against the plaintiff. The plaintiff and two other firefighters testified. On June 23, 1998, MacKenzie sent the plaintiff a draft decision proposing a reprimand and paid administrative leave. The plaintiff, however, would not accept a reprimand. Thereafter, MacKenzie concluded his

investigation and, on July 24, 1998, terminated the plaintiff's employment on the basis that his actions were affecting the safe operations of the fire department, i.e., that the plaintiff had built a distrust among his fellow firefighters.

The plaintiff thereafter discussed his firing with The Recorder, the Greenfield newspaper. He commented on the reasons for his decision to file suit against Creigle and indicated that the suit caused animosity towards him by the fire department. His comments were published in articles in The Recorder on July 29, July 30, and August 8, 1998. Also published in the articles were statements by the defendant in which she refuted the plaintiff's claim that her husband lied about his residency. She also reiterated many of the comments she made in her May 15, 1998, statement to the fire department, namely that the plaintiff harassed her family shortly before and after her husband's death.

On August 6, 1998, the plaintiff filed suit in Superior Court in Franklin County against MacKenzie and the town of Greenfield. The suit pursued five causes of action, which revolved around his allegation that he was wrongfully terminated: a "whistle-blower" claim under G. L. c. 149, § 185; a due process claim; a defamation claim; a claim under the First Amendment to the United States Constitution; and a claim stemming from his appeal rights under G. L. c. 31, §§ 41 and 42. The defendants removed the case to the United States District Court.

On May 4, 2001, the plaintiff filed the current lawsuit for defamation against the defendant Superior Court in Essex County.[4] (Also named as defendants were Herzig and various other firefighters who had provided statements during the fire department investigation. None of these defendants are parties to this appeal, however.[5])

On July 11, 2001, a Federal magistrate judge filed his report and recommendation granting the motion of the town of Greenfield and MacKenzie for summary judgment on the Federal

---

[4]A count of the complaint styled as "harassment, intimidation, [and] conspiracy" alleges the same acts as form the basis of his defamation claim. Our analysis of the defamation count applies equally to this second count.

[5]All but one of the other defendants also filed special motions to dismiss pursuant to G. L. c. 231, § 59H, which were granted. The plaintiff's claims against all of the other defendants have been resolved and are not before us.

claims. A United States District Court judge on August 13, 2001, dismissed the plaintiff's action, upholding the magistrate's recommendation and declining to retain supplemental jurisdiction over the State law claims. The next day, the defendant filed suit against the plaintiff in Superior Court in Franklin County, alleging intentional infliction of emotional distress, loss of consortium, abuse of process, and violation of G. L. c. 12, § 11I. The plaintiff answered and brought counterclaims against the defendant similar to those he brought in Essex County.

On December 5, 2001, the defendant filed her special motion to dismiss the plaintiff's claims against her in the Essex County suit. On August 27, 2002, her special motion was allowed and a judgment of dismissal entered. The plaintiff's motion for relief from that judgment was denied. A second judgment entered against the plaintiff awarding attorney's fees and costs to the defendant under G. L. c. 231, § 59H. The plaintiff now appeals from both judgments and from the order denying his motion for relief from judgment.[6]

*Discussion.* We review the judge's decision allowing the special motion to dismiss for abuse of discretion or other error of law. See *Baker* v. *Parsons*, 434 Mass. 543, 550 (2001).

General Laws c. 231, § 59H, set out in relevant part in the margin,[7] is commonly referred to as the anti-SLAPP

---

[6]Meanwhile, the defendant's Franklin County lawsuit was tried to a jury beginning in February, 2004. (A judgment of dismissal of the plaintiff's counterclaims had entered a year earlier, based on the allowance of the defendant's special motion to dismiss under the anti-SLAPP statute.) The jury found in the defendant's favor on claims for intentional infliction of emotional distress and abuse of process and awarded her $175,000 in damages. A final judgment entered in the case on April 12, 2004. A single justice of this court denied the plaintiff's motion to stay the present appeal to allow for consolidation with his appeal in the Franklin County lawsuit, which has not yet been docketed in this court and is not before us.

[7]"In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss. . . . The court shall grant such special motion, unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings and sup-

law.[8] The law was enacted by the Legislature to protect citizens from lawsuits designed to chill their constitutional right to petition the government for redress of grievances. *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. 156, 161 (1998). *Kobrin* v. *Gastfriend*, 443 Mass. 327, 335 (2005). In order to have such litigation resolved quickly and with minimal cost, the act provides a procedural remedy for early dismissal of such suits.

The legislation was intended primarily to remedy lawsuits directed at individual citizens of modest means for speaking publicly against development projects. *Id.* at 336. SLAPP suits have been characterized as "generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Duracraft Corp.* v. *Holmes Prod. Corp.*, *supra*, quoting from *Wilcox* v. *Superior Ct.*, 27 Cal. App. 4th 809, 816-817 (1994). "The objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents' exercise of rights of petitioning and speech." *Duracraft Corp.* v. *Holmes Prod. Corp.*, *supra*.

Since the statute is intended to immunize parties from claims "based on" their petitioning activities, the Supreme Judicial Court has adopted a construction of "based on" that excludes motions brought against meritorious claims with a substantial basis other than or in addition to those petitioning activities. *Id.* at 167. The special movant, therefore, must make a threshold showing through pleadings and affidavits that the claims against

---

porting and opposing affidavits stating the facts upon which the liability or defense is based.

". . .

"As used in this section, the words 'a party's exercise of its right of petition' shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made *in connection with* an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government" (emphasis supplied).

G. L. c. 231, § 59H, as amended by St. 1996, c. 450, § 245.

[8]The acronym SLAPP stands for Strategic Lawsuit Against Public Participation.

it are "based on" its protected petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities. *Id.* at 167-168. Furthermore, the Supreme Judicial Court has recently clarified that the protection of the statute extends only to petitioning in a constitutional sense, that is, activities that involve a seeking from the government of the redress of one's own grievances or otherwise petitioning on one's own behalf. *Kobrin* v. *Gastfriend, supra* at 330, 332-333.

Applying these principles, the defendant has made a threshold showing that the claims made by the plaintiff against her are "based on" protected petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities. The defendant was required to demonstrate that the statements relied on by the plaintiff constituted an exercise of her right to petition under the United States or Massachusetts Constitution. With respect to the defendant's May 15, 1998, written statement to the Greenfield fire department during its investigation, the plaintiff conceded at oral argument that the statement falls within the protection of the anti-SLAPP statute.[9]

The plaintiff's focus is on the defendant's statements that appeared in The Recorder. These statements must be viewed in the context in which they occurred: as a response to the

---

[9]We thus need not reach the issue whether, in light of the investigation's nature and initiation by the fire department rather than by the defendant, the written statement constituted petitioning by the defendant *on her own behalf* for governmental redress of grievances. See *Kobrin* v. *Gastfriend*, 443 Mass. at 332-333. Were we to consider the question, however, we are confident that the written statement would qualify under the principles recently discussed in *Kobrin*. See *id.* at 337 (defendant doctor, hired by Board of Registration in Medicine to investigate and report on plaintiff doctor, not engaged in petitioning on own behalf protected by anti-SLAPP statute; defendant had "no other connection to, or interest in, the allegations against the plaintiff"); *id.* at 338 ("Our holding in this case does not suggest that all parties solicited by the government to participate in petitioning activities will necessarily be disqualified from the anti-SLAPP law's protections. While there is no statutory requirement that petitioning parties directly commence or initiate proceedings, in protecting those petitioning activities guaranteed under the State and Federal Constitutions, see G. L. c. 231, § 59H, the statute requires that the protected party have more than a mere contractual connection to the proceedings that are the basis of the petitioning activity. The defendant asserts no such connection to the proceedings in the case at hand"). Here the defendant had a personal, noncontractual interest in the subject matter of the fire department's investigation that even predated its initiation.

plaintiff's providing the newspaper with the statements of the firefighters, other documents from the hearing of June 15, 1998, and his dismissal letter. The later statements of the defendant to The Recorder were essentially mirror images of those she made during and "in connection with"[10] the departmental investigation of the plaintiff. Taken in context, her mere repetition of those statements to the media was also possessed of the characteristics of petitioning activity. Cf. *Ayasli* v. *Armstrong*, 56 Mass. App. Ct. 740, 748-749 (2002) (neighbors' opposition to home renovation before town boards was protected, while other activities such as harassing signs and threat to do everything they could to stop the work were not); *Garabedian* v. *Westland*, 59 Mass. App. Ct. 427, 432 (2003) (neighbors' harassment and surveillance of truck drivers conducting landfill activity was not considered petitioning). In addition, the defendant's statements were sufficiently tied to and in advancement of her petition for benefits as the widow of a firefighter (see note 3 and accompanying text, *supra*) under consideration by the Legislature and by the Governor at or around the time she spoke to the reporter for the newspaper; thus, they fall within the ambit of statements made "in connection with" legislative proceedings within the meaning of G. L. c. 231, § 59H, and constitute protected petitioning activity on that basis as well. See *Plante* v. *Wylie*, *ante* 151, 159 (2005) (settlement offer by one party to other party was statement "in connection with" the administrative proceedings and protected by anti-SLAPP statute; statement was "closely and rationally related to the proceedings" and was "in furtherance of the objective served by governmental consideration of the issue under review — namely, the resolution of grievances").

For the foregoing reasons, we conclude that the defendant met her initial burden of showing that the plaintiff's action against her was based on protected petitioning activities alone and had no substantial basis other than or in addition to the petitioning activities. See *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. at 167-168. Therefore, to defeat her motion, it was up to the plaintiff to show by a preponderance of the evidence that the petitioning activity was "devoid of any reason-

---

[10]See statutory language emphasized in note 7, *supra*.

able factual support or any arguable basis in law and [that] the moving party's acts caused actual injury." G. L. c. 231, § 59H. See *Baker* v. *Parsons*, 434 Mass. at 552-554. Here the plaintiff completely failed to make such a showing. In connection with the investigation of the plaintiff, statements from over a dozen firefighters of the fire department in Greenfield corroborated the defendant's allegations of intimidation and harassment by the plaintiff. Further, a jury awarded the defendant a substantial judgment in a jury trial in her action against the plaintiff in Franklin County. See note 6, *supra*. Given these facts, it is manifest that the plaintiff could not establish the first of the conjunctive requirements — that the defendant's petitioning was devoid of any reasonable factual or legal basis.

*Other issues.* The plaintiff has also argued that (1) the motion judge improperly denied his motion for relief from the judgment of dismissal on the grounds of newly discovered evidence, and (2) a second judge abused his discretion in determining the amount of the award of attorney's fees and costs to the defendant. We do not dwell on these arguments other than to say that we have carefully reviewed the record and find them without merit.

Within fifteen days of issuance of the rescript in this matter, the defendant may apply to the panel that decided this appeal for an award of appellate attorney's fees and costs under G. L. c. 231, § 59H, as discussed in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

*Judgments affirmed.*

*Order denying motion for relief from judgment affirmed.*