## Albert R. Kalter *vs.* Anita Wood.

No. 05-P-1098.

Norfolk. April 4, 2006. - October 19, 2006.

Present: Rapoza, C.J., Brown, & Grasso, JJ.

Further appellate review granted, 447 Mass. 1113 (2006).

*"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government.

In a civil action brought by a health care provider against a patient alleging libel, intentional interference with advantageous business relationships, and intentional infliction of emotional distress, the judge properly denied the patient's special motion to dismiss, brought pursuant to G. L. c. 231, § 59H (the "anti-SLAPP" statute), where the patient's grievance letter to a private health insurance carrier, alleging inappropriate touching by the health care provider, did not constitute petitioning activity within the meaning of the statute, in that the letter was not a statement "made in connection with" an issue under governmental consideration or review, nor did it amount to a "statement reasonably likely to encourage consideration or review of an issue" by a governmental authority. [586-591] Brown, J., concurring in part and dissenting in part.

Civil action commenced in the Superior Court Department on July 26, 2004.

A special motion to dismiss was heard by *Patrick F. Brady*, J.

*Thomas M. Neville* for the defendant.

*David P. Flanagan* for the plaintiff.

Grasso, J. In this appeal, we consider whether a grievance letter sent by a patient-insured to a private health insurance carrier, alleging inappropriate touching by a network provider doctor, constitutes petitioning activity within the meaning of G. L. c. 231, § 59H (the "anti-SLAPP" statute). We conclude that it does not.

1. *Background.* The defendant, Anita Wood, brings this interlocutory appeal from the denial of a special motion to dismiss, made pursuant to G. L. c. 231, § 59H. See *Fabre* v. *Walton*, 436 Mass. 517, 521-522 (2002). Wood's motion sought

dismissal of claims against her by the plaintiff, Albert R. Kalter, a Braintree chiropractor who treated Wood on May 24, 2004. Kalter's claims were based on a June 10, 2004, letter Wood had sent to her medical insurance carrier, Blue Cross Blue Shield of Massachusetts (BCBS), alleging inappropriate conduct, sexual and otherwise, in the course of treatment at Kalter's office. Wood had sent identical letters on that same date to the Braintree police department and to the Division of Professional Licensure, office of investigations. Kalter concedes, and we assume without deciding, that Wood's letters to the Braintree police and the licensing authority were exercises of her right of petition.[1] He takes issue, however, with that sent to BCBS.

Kalter's complaint against Wood seeks damages for libel, intentional interference with advantageous business relationships, and intentional infliction of emotional distress. Wood's special motion to dismiss all the claims asserted that her grievance letter to BCBS constituted protected petitioning activity. A Superior Court judge denied Wood's motion, concluding that Wood's letter to BCBS did not constitute petitioning activity protected under the anti-SLAPP statute because BCBS is not a governmental entity.

Kalter is a member of BCBS's provider network; he furnished chiropractic services to Wood pursuant to his contract with BCBS.[2] Kalter also serves as a peer review services consultant for BCBS. Under the heading "Grievance Program," BCBS benefits description materials inform its insureds that "[y]ou have the right to a review when you disagree with a decision by [BCBS] to deny payment for services, or if you have a complaint about the care or service you received from [BCBS] or a network provider." The materials further explain that the insured has a right to a review through the BCBS internal formal grievance program, and for decisions by BCBS denying cover-

---

[1]Wood's letter to the Braintree police department prompted a visit to Kalter's office by a police detective. We are not privy to the steps, if any, taken by the department or the outcome of its investigation. Similarly, we are advised that proceedings against Kalter before the Division of Professional Licensure are ongoing.

[2]Whether Wood chose Kalter or BCBS required her to choose him from a limited number of providers is unclear on the record, but nothing turns on the point.

age for services deemed not medically necessary, a right to an external review and appeal.

BCBS responded to Wood's grievance by forwarding a copy to Kalter, requesting his written response within ten days and suspending him from providing consultant services to BCBS, pending investigation.[3]

2. *Discussion.* We review the judge's decision denying Wood's special motion to dismiss for abuse of discretion or other error of law. See *Baker* v. *Parsons*, 434 Mass. 543, 550 (2001); *Plante* v. *Wylie*, 63 Mass. App. Ct. 151, 157-158 (2005). Discerning no error, we affirm.

Under the procedure set forth in *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. 156, 167-168 (1998), to prevail on her special motion to dismiss, Wood must first show that Kalter's claims against her are based on her protected petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.

Because Kalter's claims against Wood are based on her June 10, 2004, letter to BCBS, the threshold inquiry is whether Wood's letter to BCBS amounted to the "exercise of [a] right of petition," defined in § 59H as follows:

> "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within

---

[3]BCBS's letter informed Kalter that when BCBS receives grievances from its members (i.e., insureds) regarding health care providers, "[w]e send these grievances, with the member's permission, to the provider for review and response." BCBS's letter further provided: "Please be advised that [BCBS] considers this review to be part of the confidential peer review process and, as such, the information will not be revealed to any other party except as required by law or mutually agreed to by both parties."

constitutional protection of the right to petition government."

G. L. c. 231, § 59H, inserted by St. 1994, c. 283, § 1.

Quite correctly, Wood does not contend that her letter to BCBS falls within the first category delineated in § 59H, as a statement "made before or submitted to" a governmental body. Rather, she relies on the fact that her letter to BCBS was identical to letters sent to two governmental entities, the Braintree police department and the Division of Professional Licensure. Because the letters to the latter two entities are conceded to be protected petitioning activity, Wood maintains that her identical letter to BCBS falls within the same protection. For this proposition, Wood relies primarily on our recent opinion in *Wynne* v. *Creigle*, 63 Mass. App. Ct. 246 (2005). We disagree.

Of paramount importance in *Wynne* v. *Creigle, supra,* was the context in which the admittedly protected statements were subsequently repeated. There, we concluded that the defendant's statements to the media were "mirror images" of other admittedly protected statements made in the course of a governmental investigation and so were made "in connection with" that investigation. *Id.* at 254. As the defendant in *Wynne* also had sought redress by petitioning the Legislature (and the Governor), we deemed her statements to the media as made "in connection with" legislative proceedings. *Ibid.* In combination, the circumstances giving rise to Ms. Creigle's statements to the media, the fact that they were mirror images of those previously made in a governmental investigation, and the reality that they were in furtherance of her efforts to influence legislation in her favor, brought her remarks within the anti-SLAPP statute's protection.

We conclude that notwithstanding the identity in content of the letter to BCBS and those to the two government entities, the letter to BCBS is not protected. The letter to BCBS does not fall under the second category delineated in § 59H, as a statement "made in connection with" an issue under governmental consideration or review. Nor does it amount to a "statement reasonably likely to encourage consideration or review of an is-

sue" by a governmental authority within the ambit of the third category in § 59H.[4]

To fall within the protection of the second category in the § 59H definition of the right to petition, the statement must be made in connection with an issue under governmental consideration or review. See generally *Kobrin* v. *Gastfriend*, 443 Mass. 327, 331 (2005) (statute is to be interpreted according to the Legislature's intent, ascertained from all its words, and considered in light of the statute's purpose). Here, the fact that Wood's letter to BCBS replicated protected statements sent to two governmental entities is not alone dispositive. See *Wynne* v. *Creigle, supra.* Individuals who petition the government are not necessarily free to engage in gratuitous publication of the petition elsewhere without consequence. Wood's letter to BCBS was not made in connection with an issue under review by the Braintree police or the Division of Professional Licensure. Indeed, there was no pending governmental investigation into Wood's allegations against Kalter when Wood sent her letter to BCBS. In consequence, we do not consider her letter to BCBS as falling within the statute's protection for statements "made in connection with an issue under consideration or review" by a governmental entity. See *Global NAPs, Inc.* v. *Verizon New England, Inc.*, 63 Mass. App. Ct. 600, 607 (2005); *Plante* v. *Wylie*, 63 Mass. App. Ct. at 159 (construing the "made in connection with" category of § 59H to include a statement made in an attempt to settle a pending governmental proceeding). Contrast *Baker* v. *Parsons*, 434 Mass. at 549 (biologist's response to inquiries by State and Federal environmental officials in connection with governmental review of a developer's permit applications was protected petitioning activity); *Wynne* v. *Creigle*, 63 Mass. App. Ct. at 253-254 (defendant's statements to the press concerned an issue already under consideration by two governmental bodies and were mirror images of what was said in a governmental forum).

Contrary to the dissent, we do not view Wood's letter to BCBS as a "statement reasonably likely to encourage consideration or review of an issue" by a governmental authority within

---

[4]Neither the parties nor the dissent suggests that the first, fourth, or fifth categories of statements protected by § 59H are applicable.

the third category of protected activity set forth in § 59H. Such a conclusion depends entirely on the attenuated logic that the statutory requirement to maintain a grievance program, as imposed on health insurance providers such as BCBS in G. L. c. 176O, renders Wood's complaint about the individual treatment provided by Kalter an "issue under consideration or review" by a governmental body. We decline to read the anti-SLAPP statute and the statutes regulating certain aspects of health insurance carrier practices so broadly as to immunize any statement, however defamatory, made to an insurance carrier by an insured.[5]

The statutory obligation on health insurance providers to maintain a grievance program and the regulatory oversight of that obligation is not the type of governmental activity contemplated by the anti-SLAPP statute. Nor is Wood's letter to BCBS regarding the individual treatment provided to her by Kalter the type of "statement reasonably likely to encourage consideration or review of an issue by a [governmental] body" addressed in the anti-SLAPP law.

The statutory mandate that requires BCBS to establish a grievance program is directed to activities of the insurance carrier, not those of the carrier's network of provider doctors such as Kalter. See G. L. c. 176O, § 13. Read in its entirety and in context, c. 176O makes plain that the object of its oversight is the quality of care and coverage offered to the insured by a carrier, not the service rendered by an individual provider doctor in a given instance. The definition of "grievance" in § 1 is limited to "any oral or written complaint submitted to the carrier . . . by an insured . . . concerning any aspect or action of the *carrier* relative to the *insured,* including, but not limited to, review of adverse determinations regarding scope of coverage, denial of services, quality of care and administrative operations" (emphases added). G. L. c. 176O, § 1, inserted by St. 2000,

---

[5]Whether Kalter's claims have merit, or are utterly insubstantial, is not germane to whether Wood's letter to BCBS constitutes petitioning activity under G. L. c. 231, § 59H. That statute provides a special protection that insulates "petitioning activity" against even otherwise meritorious claims. See *Duracraft Corp.* v. *Holmes Prod. Corp.,* 427 Mass. at 165 ("The focus of the statutory test . . . is *not* on the plaintiff's claim, but rather on the petitioning activity that the special movant asserts bars the plaintiff's claim . . .").

c. 141, § 27. By the plain statutory language, the grievance mechanism addresses the relationship between the insurance carrier, here BCBS, and the insured patient, Wood. Nowhere does it address any aspect or action of a provider doctor such as Kalter. That the thrust of c. 176O is directed at the relationship between insurer and insured is further fortified by the focus on such grievable matters as "review of adverse determinations regarding scope of coverage, denial of services, quality of care and administrative operations." *Ibid.* In context, the quality of care addressed in c. 176O is that furnished by the insurer, not that rendered by an individual provider doctor to an individual insured patient.

We recognize that in the materials given to insureds such as Wood, BCBS invited Wood to include in any grievance matters relating not only to its denial of payment for services, but also those regarding the care or service received from a network provider such as Kalter. However, the fact that an insurer chooses to make its grievance program broader than what is statutorily mandated does not render the grievance in its broader aspects a matter of governmental oversight.

Nor is the degree of statutory oversight of the grievance program sufficient to render Wood's particular complaint about Kalter a "statement reasonably likely to encourage [governmental] consideration or review of an issue" within the meaning of § 59H. The regulatory scheme requires an insurer such as BCBS to maintain and report certain information to the office of patient protection, established within the Department of Public Health by G. L. c. 111, § 217. G. L. c. 176O, § 7(*b*). However, the information required to be reported by BCBS merely involves numerical summaries of grievance outcomes; assessments of the quality of services provided by the carrier (not the individual provider doctor); and statistical and demographic information regarding grievants. See *ibid.* None of the informational reporting requirements makes reference to the name of the doctor, the name of the patient, or the substance of the complaint. Nor does the fact that c. 176O, § 13, mandates carriers to maintain records of patient grievances and carriers' responses thereto for inspection by the Commissioner of Insurance render complaints such as Wood's grievance about Kalter a "statement reasonably

likely to encourage consideration or review of an issue by [the government]."

The anti-SLAPP statute "provides broad protections for individuals who exercise their right to petition from harassing litigation and the costs and burdens of defending against retaliatory lawsuits." *Fabre* v. *Walton,* 436 Mass. at 520. In serving this worthy purpose, § 59H walks an uneasy line between protecting the right of citizens to petition government for redress of grievances and preserving the longstanding common-law right of individuals to seek redress in court for defamation and other civil wrongs. Mindful as we are of this precarious balance, we are not convinced, as is the dissent, that failing to extend the anti-SLAPP statute to communications such as Wood's grievance to BCBS will have a "chilling effect" on patients' utilization of carrier grievance programs. Even were that so, we view the decision to extend the statute's protections that far as a determination for the Legislature, not for this court.

Because we conclude that Wood's letter to BCBS is not petitioning activity within the meaning of the anti-SLAPP statute, we need not address the second prong of the *Duracraft* test to determine whether Kalter has demonstrated that Wood's petitioning activity is devoid of any reasonable factual support or arguable basis in law, and that Wood's acts caused actual injury to Kalter. See § 59H; *Baker* v. *Parsons,* 434 Mass. at 552-554.[6] We affirm the judge's denial of Wood's special motion to dismiss, and remand the matter to the Superior Court for further proceedings.

*Order denying special motion
to dismiss affirmed.*

BROWN, J. (concurring in part and dissenting in part). I concur with the majority that Anita Wood's letter to Blue Cross Blue Shield of Massachusetts (BCBS) was not a "statement made in

---

[6]We also need not address Wood's contention, which is not based on the anti-SLAPP statute, that her letter to BCBS was a provision of information to a medical peer review committee for which she may not be held liable as it was furnished in good faith and on reasonable belief. See G. L. c. 111, § 203(*c*).

connection with an issue under [governmental] consideration or review," G. L. c. 231, § 59H, as we construe that portion of the "anti-SLAPP" statute's definition.[1]

But what I take from *Wynne* v. *Creigle*, 63 Mass. App. Ct. 246 (2005), is the importance of the context in which Wood's letter to BCBS's grievance program was made, considered in light of the anti-SLAPP statute's purpose. See *id.* at 253-254. As noted by the majority, Wood's letter to BCBS was identical to those protected statements she made to the Braintree police department and the Division of Professional Licensure, all complaining about the quality of Albert R. Kalter's health care services and his inappropriate conduct in the course of rendering those services. The contents of the BCBS letter and its intended recipient, BCBS's grievance program, make clear that Wood sent a copy of the same letter to BCBS in furtherance of resolving her grievance concerning the caliber of BCBS's provider. Wood's letter to BCBS, in addition to mirroring the content of her petitions to two governmental entities, also mirrored their purpose, as sent "in furtherance of the objective served by governmental consideration of the issue under review — namely, the resolution of grievances." *Plante* v. *Wylie*, 63 Mass. App. Ct. 151, 159 (2005). Contrast *Global NAPs, Inc.* v. *Verizon New England, Inc.*, 63 Mass. App. Ct. 600, 606-607 (2005) (despite a pending arbitration appeal, disparaging remarks to a newspaper about a competitor were deemed neither connected to, nor in furtherance of, governmental consideration or review).

Wood emphasizes that her complaint to BCBS was the first step, pursuant to BCBS's State-mandated grievance program, in procuring governmental review of the quality of care provided by Massachusetts medical insurance carriers. In considering the context in which the BCBS letter was sent, the BCBS grievance program deserves a closer look.

Massachusetts health insurance carriers are required by law to maintain grievance programs, in order to provide "adequate

---

[1]Although I agree with the majority on this point, I would note that arguably, under the reasoning articulated in *Wynne* v. *Creigle*, 63 Mass. App. Ct. 246, 254 (2005), it is not entirely clear why Wood's "mirror-image" letter to BCBS would not constitute such a statement.

consideration and timely resolution" of patient complaints concerning coverage and quality of care. See G. L. c. 176O, § 13(*a*), inserted by St. 2000, c. 141, § 27. The office of patient protection was established by the Legislature, pursuant to G. L. c. 111, § 217, to administer and enforce the standards and procedures by which health insurance carriers implement their grievance programs, and to collect information derived from these programs.[2] See G. L. c. 111, § 217(*a*)(1); G. L. c. 176O, §§ 6, 7, 13, 14.[3] To this end, G. L. c. 176O, § 7, inserted by St. 2000, c. 141, § 27, requires carriers to report to the office of patient protection information that includes, under § 7(*b*)(1), "independently published information assessing insured satisfaction" with the quality of health care services provided by the carrier and, under § 7(*b*)(4), "a report detailing, for the previous calendar year, the total number of: (i) filed grievances, grievances that were approved internally, grievances that were denied internally, and grievances that were withdrawn before resolution; and (ii) external appeals pursued after exhausting the internal grievance process and the resolution of all such external appeals."[4] As to each category of grievance, § 7(*b*)(4) also requires the carrier to identify, to the extent such information is

[2]The office of patient protection is also responsible for assisting patients directly with questions or concerns about their grievance rights. See G. L c. 111, § 217(*a*)(3); G. L. c. 176O, § 13(*a*)(3). In addition, the office of patient protection is charged with making information collected by it accessible to consumers through maintenance of an Internet site, to include the "health plan report card" developed pursuant to G. L. c. 118G, § 24, information pertaining to quality assurance, and information on health plan premiums, finance, and policy. See G. L. c. 111, § 217(*a*)(2). In addition to its direct role in collecting, monitoring, and disseminating information for consumers and patients, the office of patient protection advises the Commissioner of Public Health and other oversight agencies "on actions, including legislation, which may improve the quality of managed care health insurance plans." G. L. c. 111, § 217(*a*)(6), inserted by St. 2000, c. 141, § 3.

[3]A grievance is broadly defined, in G. L. c. 176O, § 1, inserted by St. 2000, c. 141, § 27, as "any oral or written complaint submitted to the carrier which has been initiated by an insured, or on behalf of an insured with the consent of the insured, concerning any aspect or action of the carrier relative to the insured, including, but not limited to, review of adverse determinations regarding scope of coverage, denial of services, quality of care and administrative operations, in accordance with the requirements of this chapter."

[4]As a general matter, external appeals are available for review of a carrier's adverse determinations based on failure to meet the requirements for coverage for particular health care services. See G. L. c. 176O, §§ 1, 14.

available, "the demographics of such insureds, which shall include, but need not be limited to, race, gender and age."[5] General Laws c. 176O, § 13(*a*)(1), further mandates that carriers maintain records of patient grievances and the carriers' responses thereto for a period of seven years, for inspection by the Commissioner of Insurance.

Taken in this context, Wood's letter to the BCBS grievance program, complaining about the quality of care she received from one of its providers, takes on increased significance, as representing not merely a means to redress her own personal wrong, but as an integral part of the regulatory scheme by which the Department of Public Health oversees patient protection and, in particular, the quality of health care plans and services being offered to various segments of the population by various carriers. In view of all the circumstances, Wood's letter to the BCBS grievance program, though not directly connected to a pending matter under governmental review, should be considered under § 59H to be a "statement reasonably likely to encourage consideration or review" of the quality of the health care services being offered by BCBS, as well as of the quality of BCBS's responsiveness to its insureds, by the governmental entities charged with oversight and accreditation of health insurance carriers.

BCBS itself is not a governmental entity; on that point, the judge was correct. But to the extent the Department of Public Health is charged with oversight of the quality of health care plans and services provided by Massachusetts carriers, the accomplishment of its statutory purpose is largely dependent on the State-mandated administration by individual carriers of their grievance programs, in order to implement the legislative goal of prompt resolution of such grievances, and of annual reporting of numerical and demographic information derived from those programs to the office of patient protection. I am mindful of the overriding purpose of the anti-SLAPP statute, in recogniz-

---

[5]This is no mere formality. Failure to file the requisite information may expose the carrier to a fine of $5,000 per day, under G. L. c. 176O, § 8. Compliance with the reporting requirement is also incorporated into the minimum standards required for carrier accreditation by the Division of Insurance, as administered by the bureau of managed care under G. L. c. 176O, § 2.

ing that subjecting patients who file grievances to defamation and other suits would likely have a chilling effect on patients' utilization of carrier grievance programs, even though such programs are themselves statutorily mandated. Erosion of patient confidence in carrier-administered grievance programs would undermine the efficacy of the statutory scheme whereby governmental monitoring is achieved through annual reporting and review of grievance statistics, and ultimately frustrate State oversight of the quality of health care plans and services provided through these carriers. See, e.g., *Baker* v. *Parsons*, 434 Mass. 543, 549 (2001) (discussing the chilling effect of a suit brought against a biologist for providing information to State and Federal agencies charged with environmental protection, about the effect of plaintiff's proposed development on bird habitats); *Kobrin* v. *Gastfriend*, 443 Mass. 327, 335-336 (2005).

Based on the foregoing, Wood's letter to the BCBS grievance program should be treated as protected petitioning activity under G. L. c. 231, § 59H, as a "statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding." As a result, the denial of the defendant's special motion to dismiss, on the basis that her letter to BCBS's grievance program was not petitioning activity, should be reversed. However, because Kalter claims that Wood lacked "any reasonable factual support or any arguable basis in law" for her petitioning activity, see § 59H; *Baker* v. *Parsons*, 434 Mass. at 552-554, and that her actions caused him actual injury, see § 59H, I would remand the matter to the Superior Court so that the parties' factual disputes could be resolved by the judge, in order to determine whether Kalter met his burden. See *Baker* v. *Parsons*, 434 Mass. at 546 n.7, 553-554 ("The resolution of such factual disputes, based on the conflicting pleadings and affidavits submitted on a special motion to dismiss, is for the motion judge," applying the preponderance of the evidence standard to determine whether the defendant lacked any reasonable factual support or any arguable basis in law for her petitioning activity).