Hines, Geraldine S., J.
The plaintiffs filed this action pursuant to G.L.c. 30A, §14 on February 17, 2006, seeking review of a Final Decision of the Commissioner of the Department of Environmental Protection (“DEP”). This DEP decision established that a parcel of land situated in Falmouth, Massachusetts, which was determined to be a vernal pool,[3] does not meet the definition of isolated land subject to flooding[4] and, therefore, is not protected under the Wetlands Protection Act, G.L.c. 131, §40, and attendant regulations. Defendant Town of Falmouth (“the Town”) filed an answer on May 15, 2006, asserting counterclaims of malicious prosecution and abuse of process. Defendant DEP filed an answer on May 23, 2006. The Town then filed a motion to dismiss on June 13, 2006, and Plaintiffs filed a special motion to dismiss the Town’s counterclaims on June 14, 2006. For the following reasons, the Town’s motion to dismiss is ALLOWED and Plaintiffs’ special motion to dismiss is ALLOWED.

BACKGROUND

This dispute arose out of the Town of Falmouth’s plan to construct the New Silver Beach Sewer Collection and Treatment System, a public sewer system in the New Silver Beach section of Falmouth, Massachusetts. The new system would collect sewer effluent from 210 homes in the area, transport it to a 5,000 square foot treatment facility to be situated on a one-acre parcel owned by the Town, and then discharge it onto an adjacent leaching field. These 210 homes had private sewer systems, many of which had failed, and the area had been declared a public health emergency. On January 9, 2002, the Town filed a Notice of Intent for the project with the Falmouth Conservation Commission (“CC”) pursuant to G.L.c. 131, §40 and local wetlands by-laws. On June 17, 2002, the CC issued an Order of Conditions approving *439 the project and concluded that the parcel designated as a vernal pool did not qualify as isolated land subject to flooding.
On August 15, 2002, a group called Falmouth Residents for Fair Sewage Treatment (“FRFST”) filed an appeal of the CC Order of Conditions in Barnstable Superior Court. The Court initially allowed the stay requested by FRFST, but it was subsequently vacated by the Massachusetts Appeals Court. On January 28, 2004, the Barnstable Superior Court (Cannon, J.) upheld the CC’s decision concerning the project, and specifically noted in dicta that there was no evidence before the CC conclusively demonstrating that the parcel qualified as isolated land subject to flooding. FRFST appealed the Superior Court decision. On June 6, 2005, the Appeals Court affirmed the Superior Court decision, and in dicta specifically upheld the CC’s conclusion that the parcel did not qualify as isolated land subject to flooding.
After the CC issued its Order of Conditions, FRFST requested that the DEP issue a Superceding Order of Conditions. On December 22, 2002, the DEP issued a Superceding Order of Conditions approving the construction of the sewer line and a Superseding Determination of Applicability for construction of the treatment facility. The DEP also concluded that the parcel did not qualify as wetland resources subject to state protection. On January 2, 2003, FRFST appealed the DEP decision to the Office of Administrative Appeals. On July 1, 2003 an Administrative Magistrate conducted a hearing, and issued a Recommended Final Decision on October 17, 2005 affirming the DEP’s decision. On November 11, 2005, the Commissioner of the DEP adopted the Magistrate’s decision, and FRFST subsequently filed a Motion for Reconsideration. The Commissioner denied this motion on January 26, 2006, and the FRFST then filed the present action pursuant to G.L.c. 30A, §14.

DISCUSSION

A. The Town’s Motion to Dismiss

A motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6) should be granted only if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” General Motors Acceptance Corp. v. Abington Caves Ins. Co., 413 Mass. 583, 584 (1992), quoting Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Coney v. Gibson, 355 U.S. 41, 45-46 (1957). For purposes of a motion to dismiss, all allegations in the plaintiffs complaint must be taken as true and the court must draw all reasonable inferences therefrom in favor of the plaintiff. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 87 (1979), quoting Nader, 372 Mass. at 98. A complaint is not subject to dismissal if it could support relief under any theory. Id. at 89.
The Town argues in its motion to dismiss that res judicata prevents this court from reviewing the DEP decision because the claims and issues asserted by the Plaintiffs have already been adjudicated in the Massachusetts Appeals Court. The Plaintiffs argue in opposition that res judicata does not apply because the Appeals Court reviewed the CC decision, and the claim before this court seeks review of the DEP decision. The CC and the DEP are two separate administrative agencies, and each issued a separate and distinct decision pursuant to its own wetlands protections scheme. The Plaintiffs correctly assert that the Appeals Court’s review of the CC decision does not address the same claims or issues as the claims and issues in the current action seeking review of the DEP decision. Thus, res judicata does not bar the present action.
The Town also alleges that the Plaintiffs’ claims pursuant to G.L.c. 30A, § 14 are moot because the local by-laws protecting wetlands are more stringent than state protections pursuant to G.L.c. 131, §40, particularly regarding isolated land subject to flooding and vernal pools.[5] Specifically, the Town argues that the DEP lacks the power to supercede the CC decision because it was based on more stringent local by-laws, and thus this court cannot review the DEP decision because the CC decision governs. The earlier decisions in the Barnstable Superior Court and the Massachusetts Appeals Court regarding this parcel of land noted that the CC permissibly relied on Falmouth’s local by-laws in its evaluation. Additionally, according to Massachusetts case law, “[i]f a local wetlands protection by-law is more stringent than G.L.c. 131, §40, and the conservation commission operates thereunder, the DEP appears to lack the power to supersede the commission’s decision on a notice of intent to do work altering wetlands ...” Conservation Comm’n of Falmouth v. Pacheco, 49 Mass.App.Ct. 737, 741 n.4 (2000), citing Hamilton v. Conservation Comm’n of Orleans, 12 Mass.App.Ct. 359, 367-70 (1981). See also Hobbs Brook Farm Prop. Co., LLP v. Conservation Comm’n of Lincoln, 65 Mass.App.Ct. 142, 149 (2005) (“when a local conservation commission rests its decision on a wetlands by-law that provides greater protection than the act, its decision cannot be preempted by a DEP superseding order”); DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. 132, 135 (1991), citing Golden v. Selectmen of Falmouth, 358 Mass. 519, 525-26 (1970) (“local authorities do have final power . . . where they are acting pursuant to an ordinance or by-law which is consistent with the act, but which permissibly imposes ‘more stringent controls’ than the minimum Statewide standards set by the Legislature”).
A comparison of the Falmouth by-laws c. 235 and attendant regulations, and G.L.c. 131, §40 and attendant regulations, reveals that the local by-laws and regulations are in fact more stringent. See G.L.c. 131, §40; Town of Falmouth by-laws c. 235; 310 C.M.R. §10.57; F.W.R. §§10.57, 10.58; Hobbs Brook, 65 Mass.App.Ct. at 149-52. First, although the state *440 statute and the local by-law have the same general purpose to protect resource area values, the local by-law provides broader protection that includes erosion and sedimentation. G.L.c. 131, §40; Town of Falmouth by-laws c. 235, §235-1. In addition, the DEP regulation defines isolated land subject to flooding as an area confining standing water to a volume of at least 1/4-acre feet which is equivalent to 10,890 cubic feet, while the Falmouth regulation defines it as an area confining standing water to a volume of at least 5,000 cubic feet. 310 C.M.R. § 10.57(2)(b)(1); F.W.R. §10.57(2)(b). Therefore, more land would be subject to protection under the local regulation as isolated land subject to flooding. The Falmouth regulations also provide greater protection for vernal pools, with a provision specifically governing vernal pools that would allow more land to be identified as a vernal pool and more protection for this type of wetland resource. F.W.R. §10.58. The DEP regulation only mentions vernal pools within the provisions governing isolated land subject to flooding. 310 C.M.R. §§10.57(1)(b)(4), 10.57(2) (b)(5), 10.57(3)(b)(4).
Thus, the broader protection under the local by-law against erosion and sedimentation, and the broader protections under the local regulations for vernal pools and isolated land subject to flooding “impose a more rigorous local regulatory scheme.” Hobbs Brook, 65 Mass.App.Ct. at 149. Consequently, the CC decision cannot be superseded by any DEP decision because the CC decision was based on more stringent local by-laws. See Hobbs Brook, 65 Mass.App.Ct. at 152-53; Pacheco, 49 Mass.App.Ct. at 741 n.4; DeGrace, 31 Mass.App.Ct. at 135. Plaintiffs’ claim seeking review of the DEP Final Decision is moot.[6]

B. Plaintiffs’ Special Motion to Dismiss Pursuant to G.L.c. 231, §59H

General Laws c. 231, §59H (the state anti-SLAPP statute) states, “[i]n any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party’s exercise of its right to petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss.” In addition, “[t]he court shall grant such special, motion, unless the party against whom such special motion is made shows that: (1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party’s acts caused actual injury to the responding party.” G.L.c., 231, §59H.
Thus, in order to prevail on a claim pursuant to G.L.c. 231, §59H, the moving party “must make a threshold showing through pleadings and affidavits that the claims against it are ‘based on’ its protected petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Wynne v. Creigle, 63 Mass.App.Ct. 246, 252-53 (2005), citing Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167-68 (1998). The Legislature “intended to enact very broad protection for petitioning activities” under this statute. Duracraft, 427 Mass. at 162. Petitioning activities include:
[1] any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; or [5] any other statement falling within constitutional protection of the right to petition government.
G.L.c. 231, §59H. The Massachusetts Supreme Judicial Court has interpreted this statute to include activities that involve “seeking from the government any form of redress for a grievance of [one’s] own or otherwise petitioning on [one’s] own behalf.” Kobrin v. Gastfriend, 443 Mass. 327, 330 (2005).
The Town alleges that the Plaintiffs’ appeals of the CC and DEP decisions demonstrate an ulterior motive and delaying tactic, rather than petitioning activity. The Plaintiffs’ appeals of the administrative decisions qualify as protected petitioning activities according to the first and third statutorily-defined categories and case law. In fact, the legislature aimed “to protect ‘citizen protest in the area of land development,’ ” which is precisely the situation in which Plaintiffs find themselves. Plante v. Wylie, 63 Mass.App.Ct. 151, 158 (2005), quoting Kobrin, 443 Mass. at 336.
In their appeals of the DEP decision to administrative agencies and the Superior Court, Plaintiffs were seeking redress from executive and judicial bodies of their grievances stemming from the decisions made by the DEP. See Kobrin, 443 Mass. at 330. As this court explained above, review of the CC decision and review of the DEP decision are not the same claim nor the same issue, so Plaintiffs’ activities in the present action are legitimately in furtherance of their statutory right pursuant to G.L.c. 30A, §14 to seek judicial review of an administrative decision by the DEP. The Plaintiffs’ appeals constitute protected petitioning activity because they are “written or oral statements] made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding” and “statements] reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding.” G.L.c. 231, §59H.
Plaintiffs’ prior appeals of the CC decision to administrative agencies and the Superior and Appeals Courts also qualify as protected petitioning activities for the same reasons as the appeals of the DEP decision. The Plaintiffs were seeking redress from *441 executive and judicial bodies of their grievances stemming from the decisions made by the CC. See Kobrin, 443 Mass. at 330. The prior appeals constitute protected petitioning activities because they were “written or oral statement[s] made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding” and “statement[s] reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding.” G.L.c. 231, §59H.
The Town also alleges that comments made by the Plaintiff Richard Healer to the Falmouth Enterprise about the project demonstrate an ulterior motive and delaying tactic, rather than petitioning activity. Those comments were made “in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding.” G.L.c. 231, §59H. Healer’s statements reflected the Plaintiffs’ position as to their petitioning activity before the administrative agencies and the courts, and were “sufficiently tied to” and “in conjunction with” the petitioning so as to qualify as protected petitioning activity. Compare Wynne, 63 Mass.App.Ct. at 253-54 (finding that statements made to the media that were mirror images of protected statements and were made about an issue already under review were sufficiently “in connection with” a pending review as to be protected under the anti-SLAPP statute), with Kalter v. Wood, 2006 WL 2959514, at *3 (Mass.App.Ct. Oct. 19, 2006) (finding that a letter to a health insurer which was identical to letters sent to government agencies requesting review of a doctor’s activities was not made “in connection with” any on-going investigation or review, and thus was not protected under the anti-SLAPP statute).
Finally, the pleadings also demonstrate that the Town’s claims are based on the Plaintiffs’ protected petitioning activities alone because no activity is mentioned as the basis for the Town’s claims other than the Plaintiffs’ petitioning for review of administrative decisions and Healer’s comments connected to and made in conjunction with the petitioning activity. See Fabre v. Walton, 436 Mass. 517, 524 (2002). The Plaintiffs have therefore met the threshold showing required by G.L.c. 231, §59H. See Kobrin, 443 Mass. at 330; Wynne, 63 Mass.App.Ct. at 253-54.
Once the moving party makes the threshold showing, the burden shifts to the non-moving party “to show by a preponderance of the evidence that the petitioning activity was ‘devoid of any reasonable factual support or any arguable basis in law and [that] the moving party’s acts caused actual injury.’ ” Wynne, 63 Mass.App.Ct. at 254-55, quoting G.L.c. 231, §59H. The Plaintiffs’ petitioning activity did have factual support from the expert evidence they provided to the administrative agencies and the courts which supported their position and contradicted the Town’s evidence as to whether the parcel qualified as wetlands subject to state and local protection. In addition, the Plaintiffs had a basis in law to pursue their appeals under the internal appeals processes for the CC and the DEP, and the state statutes permitting judicial review of administrative decisions. G.L.c. 249, §4; G.L.c. 30A, §14. The Town has failed to show that the Plaintiffs had no reasonable factual support and no arguable basis in law to support their petitioning activity, and thus cannot meet their burden regardless of whether there was any injury caused. Plaintiffs therefore prevail on their special motion to dismiss pursuant to G.L.c. 231, §59H.

ORDER FOR JUDGMENT

For the reasons set forth above, it is hereby ORDERED that Defendants’ motion to dismiss is ALLOWED and Plaintiffs’ special motion to dismiss is ALLOWED.

The pertinent state regulation defines a vernal pool habitat as: “confined basin depressions which, at least in most years, hold water for a minimum of two continuous months during the spring and/or summer, and which are free of adult fish populations, as well as the area within 100 feet of the mean annual boundaries of such depressions, to the extent that such habitat is within an Area Subject to Protection Under G.L.c. 131, §40 as specified in 310 CAR 10.02 (1).” 310 CAR §10.04.

The pertinent state regulation defines isolated land subject to flooding as: “an isolated depression or closed basin without an inlet or an outlet . . . which at least once a year confines standing water to a volume of at least 1 /4 acre-feet and to an average depth of at least six inches.” 310 CAR §10.57(2)(b)(1).

Falmouth Wetlands Regulations §10.57(2)(b)(1) (1998) defines isolated land subject to flooding as: “an isolated depression or closed basin without an inlet or an outlet. . . which at least once a year confines standing water to a volume of at least five thousand (5,000) cubic feet and to an average depth of at least six inches.” Falmouth Wetlands Regulations §10.57(4)(b)(1998) sets out the requirements for projects that would affect isolated land subject to flooding. Falmouth Wetlands Regulation §10.58(2)(a)(1998) defines a vernal pool as: “a confined basin depression which, at least in most years, holds water for a minimum of two continuous months during the spring and/or summer, and which are free of adult fish populations.” Falmouth Wetlands Regulation §§10.58(1) and (3)-(7)(1998) set out the requirements for projects that would affect a vernal pool habitat.

Contrary to the Plaintiffs’ assertion, because the claim pursuant to G.L.c. 30A, §14 is moot, this court does not need to review the administrative record before ruling on the motion to dismiss.