EDMOND H. PLANTE & another,[1] trustees,[2] *vs.* DAVID A. WYLIE.

No. 03-P-1122.

Worcester. June 7, 2004. - March 11, 2005.

Present: LENK, KANTROWITZ, & COHEN, JJ.

*"Anti-SLAPP"* Statute. Corporation, Charitable corporation. *Subdivision Control,* Approval of plan. *Real Property,* Record title, Boundary.

This court concluded that an attorney who was sued for voicing the positions of a petitioning client could bring a special motion to dismiss under G. L. c. 231, § 59H, the "anti-SLAPP" statute, where suits directed against the attorneys who represent petitioning parties were just as likely to exert a . chilling effect on petitioning activity as suits directed against the parties themselves, and the costs to attorneys and their clients if such suits could not promptly be dismissed were just as likely to impede the clients' right to petition, not to mention their right to be represented. [155-157]

A Superior Court judge erred in denying the defendant's special motion to dismiss, pursuant to G. L. c. 231, § 59H (the "anti-SLAPP" statute), a civil action brought by trustees of a realty trust against the defendant for statements he made regarding a certain subdivision in his capacity as attorney for a citizens' group organized as a conservation trust, where the defendant met his initial burden of showing that the plaintiffs' action against him was based on protected petitioning activities alone and had no substantial basis other than or in addition to the petitioning activities, and where the plaintiffs could not establish that the defendant's statements regarding the subdivision were devoid of any factual or legal basis. [157-161]

CIVIL ACTION commenced in the Superior Court Department on May 19, 2000.

A special motion to dismiss was heard by *Francis R. Fecteau,* J.

*Catherine J. Savoie (Susan S. Riedel* with her) for the defendant.

*Roger J. Brunelle* for the plaintiffs.

---

[1]Curtis Plante.

[2]Of Lover's Leap Realty Trust.

*Jerome L. Aaron*, for Independent Lawyers Association, amicus curiae, submitted a brief.

COHEN, J. Shortly after the Bolton Conservation Trust derailed the plaintiffs' efforts to win approval for expansion of their subdivision development, the plaintiffs filed suit against the conservation trust's attorney, David A. Wylie, alleging that Wylie violated the State civil rights act, the Federal RICO statute, and G. L. c. 93A, in his communications to them regarding title problems in the subdivision. A judge of the Superior Court denied Wylie's special motion to dismiss pursuant to G. L. c. 231, § 59H (the anti-SLAPP statute), on the ground that the suit was not based solely upon protected petitioning activity. Before us is Wylie's interlocutory appeal from that ruling.

We conclude that the statements upon which the plaintiffs' base their claims did, in fact, constitute protected petitioning activity under G. L. c. 231, § 59H, because they were statements made "in connection with" subdivision issues that were under consideration by the planning board of the town of Bolton (board). Accordingly, we reverse the order denying Wylie's special motion to dismiss.[3]

*Background.*[4] In 1994, the plaintiffs, Edmond H. Plante and Curtis Plante, trustees of Lover's Leap Realty Trust, received approval from the board for a residential subdivision plan on Berlin Road. Two years later, the plaintiffs obtained two septic system permits from the Bolton board of health for a portion of the subdivision that bordered land owned by Roger and Anna Ela. Upon learning, during construction, of a possible problem with their title to the subject property, the plaintiffs attempted to reach an agreement with the Elas regarding ownership, but the boundary issue remained unresolved when Roger Ela died. Thereafter, the Elas' daughter, Nancy Caisse, assisted her mother in negotiations with the plaintiffs.

---

[3]We acknowledge the amicus brief submitted by the Independent Lawyers Association, an unincorporated association of lawyers practicing in Massachusetts.

[4]We take the facts from the judge's December 13, 2000, "Memorandum of Decision and Order on Defendant's Special Motion to Dismiss," supplemented here and in our discussion from the pleadings and record before the judge.

The conservation trust, a charitable corporation organized under G. L. c. 180 for the purpose of assisting and promoting the preservation of Bolton's rural character and natural resources, became involved in the dispute. In November, 1998, the boundary question was discussed at a meeting attended by Edmond Plante (Plante), Caisse, Bonnie Potter (the president of the conservation trust), and Wylie (acting as the conservation trust's attorney), but no agreement was reached. In a letter to Plante dated December 7, 1998, Wylie summarized the meeting, recounting that Plante had asserted that the plaintiffs had a superior claim to the disputed property and had expressed his intention to obtain a court decree, and that Caisse had responded by indicating that she would seek the assistance of the conservation trust in defending her position that the plaintiffs were not entitled to the property or to the expanded development they proposed. In addition to commenting upon the title issue, Wylie also mentioned a "public trail easement" that he asserted had long existed on the property in question. The conservation trust's president, Bonnie Potter, was both referenced in the text of the letter and copied on the letter.

On August 19, 1999, Plante filed a petition for a special permit with the board, seeking expansion of the plaintiffs' original subdivision plan to create a new house lot, referred to as lot 10, and to enlarge the existing lot 8 to accommodate the septic system. It was the plaintiffs' title to lots 8 and 10 that was disputed by the Ela family and the conservation trust. According to the Elas and the conservation trust, the original subdivision plan had identified the disputed area as belonging to "owner unknown" or as belonging to the Elas, and it was not open to the plaintiffs to build upon it. On October 13, 1999, Anna Ela deeded a portion of her property to the conservation trust, intending that it be preserved for conservation use; the conveyance included the boundary area abutting the plaintiffs' proposed subdivision expansion.

When Plante's petition to expand the subdivision was heard by the board, beginning in October, 1999, Wylie appeared in opposition on behalf of the conservation trust and challenged the plaintiffs' ownership of the property proposed for expansion. The board requested that the parties submit evidence regarding

the location of the subdivision boundary. Accordingly, in November, 1999, the conservation trust hired its own engineer to investigate the title issue and, in the process, discovered that the conservation trust appeared to own seven and one-half acres of land to which the plaintiffs claimed title, a portion of which the plaintiffs already had developed and sold to third parties.

On December 21, 1999, Wylie met with Plante's attorney, David Philbin, to review the engineer's findings. In January, 2000, with notice to Philbin, Wylie met with the homeowners who had purchased the affected lots from the plaintiffs, and suggested that they contact their own attorneys and title insurance companies.

By letter dated February 4, 2000, Wylie wrote to Philbin to extend a settlement offer, indicating that the conservation trust would release its rights in the lots already developed and sold, in return for the plaintiffs' agreement to release their claims to the disputed lots 8 and 10. Wylie also sought the conservation trust's costs and attorney's fees (as well as those of the affected homeowners) in connection with resolving the title issue. Upon learning that Philbin no longer represented Plante, Wylie sent a similar letter to Plante directly, to which he received no reply. Potter, the conservation trust president, was copied on both of these letters.

On March 6, 2000, Potter learned that heavy equipment and trucks had moved into the disputed area. At Potter's request, Wylie obtained a temporary restraining order against the plaintiffs in the Land Court. On March 13, 2000, the Land Court granted the conservation trust a preliminary injunction prohibiting the further clearing of lots 8 and 10 (the judge noting that fifty to sixty trees already had been cut down on the disputed property). On April 5, 2000, Plante withdrew from the board the plaintiffs' still-pending petition for further development.

A few weeks later, on May 18, 2000, the plaintiffs filed a complaint against Wylie in Superior Court, amending it as of right after Wylie moved to dismiss. Both the original and amended complaints alleged that Wylie interfered with the plaintiffs' exercise of their right to use and enjoy their property, in violation of G. L. c. 12, § 11H; that he engaged in racketeer-

ing activity in violation of 18 U.S.C. § 1961; and that he committed unfair or deceptive acts or practices in violation of G. L. c. 93A, §§ 2 and 11. Apparently with the anti-SLAPP statute in mind, the plaintiffs made no allegations concerning Wylie's representation of the conservation trust before the board or in the Land Court, instead limiting their focus to his communications to the plaintiffs regarding the boundary dispute. In particular, although the amended complaint recited earlier background events, the essential factual predicate for the plaintiffs' claims was Wylie's correspondence to the plaintiffs in February, 2000. As the plaintiffs explain in their brief, each of their three causes of action was based upon what they characterize as Wylie's "threat" that the conservation trust would pursue its claim of ownership to land already developed unless the plaintiffs (1) conveyed lots 8 and 10 to the conservation trust, and (2) made payments for legal fees and expenses that, in the plaintiffs' view, were unsubstantiated and unwarranted.

Wylie filed a motion to dismiss the amended complaint, including a special motion to dismiss under G. L. c. 231, § 59H, accompanied by Wylie's affidavit and the pleadings from the Land Court action.[5] The plaintiffs' opposition to the motion included the affidavits of Plante and his attorney, and the conservation trust's articles of organization under G. L. c. 180.

*Discussion.* We first consider whether Wylie may avail himself of the anti-SLAPP statute when the statements that form the basis of the plaintiffs' claims were made by him as an attorney on behalf of the conservation trust.

"SLAPP suits have been characterized as 'generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them

---

[5]Wylie also moved to dismiss for failure to state a claim upon which relief can be granted under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), on the ground that, as an attorney, he was entitled to absolute immunity from civil liability with respect to communications made preliminary to or in the course of legal proceedings in which he participated as counsel. See *Sriberg* v. *Raymond*, 370 Mass. 105, 108 (1976). The judge ruled that he would consider this argument only after discovery, on a motion for summary judgment. We do not consider whether Wylie's rule 12(b)(6) motion should have been allowed, as both parties take the position that Wylie's interlocutory appeal is confined to the denial of his anti-SLAPP motion.

for doing so.' " *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. 156, 161 (1998), quoting from *Wilcox* v. *Superior Ct.*, 27 Cal. App. 4th 809, 816-817 (1994). Although the anti-SLAPP statute can have broader application, "[t]he typical mischief that the legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Kobrin* v. *Gastfriend*, 443 Mass. 327, 336 (2005), quoting from *Office One, Inc.* v. *Lopez*, 437 Mass. 113, 121-122 (2002).

Unquestionably, a citizens group such as the conservation trust is entitled to invoke the anti-SLAPP statute if a suit is filed against it based solely upon its protected petitioning activities in opposing a development project. The issue remains, however, whether Wylie, as the conservation trust's attorney, may likewise avail himself of the statute. We conclude that he may.

In the recent decision of *Kobrin* v. *Gastfriend*, 443 Mass. at 332, the Supreme Judicial Court emphasized that the anti-SLAPP statute is restricted by its language[6] "to those defendants who petition the government on their own behalf. In other words, the statute is designed to protect overtures to the government by parties petitioning in their status as citizens." Thus, the court held that a disinterested paid expert witness in a disciplinary case before the Board of Registration in Medicine was not entitled to the protection of the anti-SLAPP statute because he was not seeking redress for a grievance of his own or otherwise petitioning on his own behalf. *Id.* at 330.

We think, however, that an attorney's representation of petitioning citizens stands on a very different footing. Indeed, the statute would provide but hollow protection for citizens who wish to exercise their right of petition if statements made by an attorney on their behalf were not covered by the anti-SLAPP statute to the same extent as statements made by them directly. The statute is designed to deter lawsuits filed to intimidate citizens from legitimately petitioning the government for redress of grievances and to provide a mechanism for the prompt

---

[6]The court focused on the statutory requirement that the challenged claims be based on the special movant's "exercise of its right of petition under the constitution of the United States or of the commonwealth." *Kobrin* v. *Gastfriend*, 443 Mass. at 332, quoting from G. L. c. 231, § 59H.

dismissal of such lawsuits before the petitioning party has been forced to incur significant costs of defense. *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. at 161. Such suits directed against the attorneys who represent petitioning parties are just as likely to exert a chilling effect on petitioning activity as suits directed against the parties themselves, and the costs to attorneys and their clients if such suits cannot promptly be dismissed are just as likely to impede the clients' right to petition, not to mention their right to be represented. For these reasons, irrespective of any other remedies that may be available,[7] we conclude that an attorney who is sued for voicing the positions of a petitioning client may bring a special motion to dismiss under the anti-SLAPP statute.

*Office One, Inc.* v. *Lopez, supra,* implicitly supports this conclusion. In that case, the plaintiffs alleged numerous claims against the trustees of a condominium and the law firm that represented them. One of the claims asserted against both the trustees and their counsel was interference with contractual relations (count III) — a claim that the motion judge dismissed as to all defendants under the anti-SLAPP statute. *Id.* at 114, 119-120. On appeal, the court held that dismissal of this claim was proper because it was predicated upon the defendants' petitioning activity, and the plaintiffs had failed to show that the petitioning activity was devoid of any reasonable factual basis or basis in law. *Id.* at 122-124. The court drew no distinction between the trustees and their counsel, stating only that "[t]he *various defendants* had a clear interest in resolving the legal issues presented by [the plaintiff's] proposed use [of condominium units that it purchased from the FDIC] and were entitled to contact the FDIC and elected officials to request their review of the FDIC sale" (emphasis supplied). *Id.* at 124. We take this to mean that the law firm defendants could properly invoke G. L. c. 231, § 59H, because they were sued on account of petitioning activity undertaken on behalf of their clients.[8]

We now turn to the merits of Wylie's special motion to

---

[7]See note 4, *supra.*

[8]In the present case, there are intimations that Wylie's statements also furthered his personal, independent interest in the controversy with the plaintiffs. The amended complaint alleges that, at an initial meeting held to

dismiss, reviewing the judge's decision for abuse of discretion or other error of law. See *Baker* v. *Parsons*, 434 Mass. 543, 550 (2001).

In seeking dismissal under the anti-SLAPP statute, Wylie was required to "make a threshold showing through the pleadings and affidavits that the claims against [him] are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. at 167-168, quoting from G. L. c. 231, § 59H. As mentioned earlier, an overarching consideration in identifying protected petitioning activities is whether they involve the moving "party's exercise of its right of petition under the constitution of the United States or of the commonwealth." *Kobrin* v. *Gastfriend*, 443 Mass. at 332, quoting from G. L. c. 231, § 59H. When citizens make overtures to the government, such activity may come within the ambit of the statute; there is, however, no statutory requirement that petitioning parties directly commence or initiate proceedings. *Id.* at 338.

As previously observed, the primary aim of the statute is to protect "citizen protest in the area of land development." *Id.* at 336. Thus, as a general matter, the conservation trust's activities in opposing the plaintiffs' development before the board (and later in the Land Court) are precisely the types of activities that the statute was designed to shield. At issue is whether the statute's protection extends to communications with respect to settlement, the wrinkle being that, although Wylie's settlement letters were sent while the board proceedings were pending,

---

discuss the boundary dispute, Wylie indicated that he was a member of the conservation trust as well as its attorney; however, in his affidavit, Wylie states only that he is "an attorney, and counsel for the [conservation trust] in connection with its land use dispute with the plaintiffs." Wylie also may have had a personal stake in his demand for payment of his fees, at least if they were not otherwise to be paid in full by his clients. But because the record is not adequately developed on these points, we do not consider whether these factors, alone or in combination, would suffice to show that Wylie had an independent interest in the controversy that would support his use of the anti-SLAPP statute apart from his status as the conservation trust's attorney. See *Kobrin* v. *Gastfriend*, 443 Mass. at 338-340, explaining *Baker* v. *Parsons*, 434 Mass. 543 (2001).

they were communicated to the plaintiffs and not directed to the board.

The specific categories of petitioning activities delineated in § 59H provide guidance on this issue. "A party's exercise of its right of petition" is defined in the statute as:

> "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; *any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding*; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government" (emphasis supplied).

G. L. c. 231, § 59H, inserted by St. 1994, c. 283, § 1.

Of particular relevance here is the category "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding." Without attempting to define fully the contours of this category, we think that, in keeping with the objectives of the statute, it must be construed to include statements made by one participant in a pending governmental proceeding to another in an effort to settle the controversy. Even though such statements are communicated to other private citizens rather than directly to the government, they are closely and rationally related to the proceedings proposed to be compromised, and they are in furtherance of the objective served by governmental consideration of the issue under review — namely, the resolution of grievances.[9]

The motion judge appears to have taken a similar view,

---

[9] The types of activities that have been deemed to fall outside protected petitioning activity stand in marked contrast to a settlement demand made to resolve a disputed issue that is undergoing governmental review. See, e.g., *Garabedian* v. *Westland*, 59 Mass. App. Ct. 427, 432 (2003) (enlisting neighborhood opposition to land filling and grading work was protected, but

evidently assuming that communications from Wylie to the plaintiffs about matters before the board could be protected petitioning activity. But ultimately he ruled that the communications targeted by the plaintiffs included statements involving "the Trust's interests in resolving its *own* dispute, distinct from the petitions before the town boards" (emphasis in original). The judge specifically referred to "the Trust's communications with the Plantes relating to the title issue discovered by their engineers and attempts to resolve the matter."

It is evident that the judge was referring to that portion of Wylie's February 4, 2000, correspondence that charged the plaintiffs with previously having built upon and sold house lots on land then owned by the Elas and later conveyed to the conservation trust. The judge apparently viewed this aspect of the dispute between the conservation trust and the plaintiffs as separate from the matters that were before the board, which involved the plaintiffs' proposed expansion of the subdivision onto property they did not appear to own. On that basis, the judge determined that the plaintiffs' complaint against Wylie was not wholly concerned with protected petitioning activity and denied Wylie's special motion to dismiss.

We think that Wylie's settlement proposal cannot be parsed so finely. Here, the boundary issue was not just an isolated dispute between neighbors; it was an integral part of the issue under consideration by the board, that is, whether the plaintiffs should be permitted to expand their subdivision when there remained substantial questions about the plaintiffs' ownership of the land they were developing. The issue raised by Wylie regarding house lots already built upon and sold directly pertained to the proceedings then before the board, which involved the proposed expansion of the same subdivision. Indeed, the title problem with existing lots was discovered as a result of the board's request that the parties submit evidence on the boundary issue. It was during the conservation trust's ensuing investigation that it became evident that the plaintiffs' title

harassing truck drivers and videotaping their work was not); *Ayasli* v. *Armstrong*, 56 Mass. App. Ct. 740, 748-749 (2002) (neighbors' opposition to home renovation before town boards was protected, while their menacing dogs, harassing signs, trespassing golf balls and threat to do everything they could to stop the work, were not).

problems were not restricted to lots 8 and 10, but also involved previously developed land.

Wylie's February 4, 2000, letter, which the judge viewed as relating, at least in part, to the conservation trust's "own dispute," reflected the conservation trust's concern that both the originally filed subdivision plan and the proposed expansion evidenced inconsistencies in the plaintiffs' representations to the planning board regarding their ownership of the land in question. The letter also offered a global settlement whereby the conservation trust would release its rights in the previously sold lots with problematic title, in exchange for the plaintiffs' transfer to the conservation trust of lots 8 and 10, which were the subject of the pending board proceedings, together with the payment of associated fees and expenses. Thus, whether viewed from the perspective of the plaintiff developers, the conservation trust, or the town planning board, the resolution of title issues pertaining to the previously sold lots and those pertaining to the proposed expansion of the development were inextricably intertwined.

*Conclusion.* For the foregoing reasons, we conclude that Wylie met his initial burden of showing that the plaintiffs' action against him was based on protected petitioning activities alone and had no substantial basis other than or in addition to the petitioning activities. *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. at 167-168. Therefore, to defeat his motion, it was incumbent upon the plaintiffs to show that Wylie's exercise of his right to petition was devoid of any reasonable factual support or any arguable basis in law, and that his acts caused them actual injury. See *Office One, Inc.* v. *Lopez*, 437 Mass. at 123. In other circumstances we might be inclined to remand the case for consideration of these issues. Here, however, given the success of Wylie and the conservation trust in the Land Court action, it is manifest from the record that the plaintiffs cannot establish the first of these conjunctive requirements — that Wylie's statements were devoid of any reasonable factual or legal basis. See *Adams* v. *Whitman*, 62 Mass. App. Ct. 850, 858 (2005) ("Although the trial court did not perform this portion of the anti-SLAPP analysis, we reach it on appeal since only one conclusion is possible on this record").

The order of the Superior Court denying Wylie's special mo-

tion to dismiss is therefore reversed. The case is remanded for the entry of new orders allowing the motion and awarding to Wylie his costs and reasonable attorney's fees pursuant to G. L. c. 231, § 59H. Within fifteen days of issuance of the rescript in this matter, Wylie may also apply to the panel who heard and decided this appeal for an award of appellate attorney's fees and costs in the manner described in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

*So ordered.*