Kirpalani, Maynard M., J.
The plaintiffs claims arise out of the Probate and Family Court’s dissolution of the plaintiffs attachments and execution on a parcel of real estate owned, prior to its sale, by the plaintiffs son and his ex-wife. The plaintiff has brought suit against her son’s ex-wife, the Special Master appointed by the Probate and Family Court, two law firms, three attorneys, and a creditor. Three motions are presently before this court. All three are special motions to dismiss pursuant to the Anti-SLAPP Act, G.L.c. 231, §59H. For the reasons stated below, the special motion to dismiss pursuant to G.L.c. 231, §59H, filed by defendant William Mayer as Special Master is DENIED; the special motion to dismiss pursuant to G.L.c. 231, §59H, filed jointly by defendants Maryjo Hart and Murray, Murray & Richards, P.C., is DENIED; and the special motion to dismiss pursuant to G.L.c. 231, §59H, filed by the plaintiff with respect to the defendant Hart Law Offices, P.C’s counterclaim is ALLOWED.
BACKGROUND
The following facts are taken from the plaintiffs Verified Complaint and the supporting and opposing affidavits submitted for each special motion to dismiss. G.L.c. 231, §59H (2000 ed. & Sup. 2012) (“In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based”).
Dale M. Gerard (“the wife”) filed for a divorce from Michael Gerard (“the husband”) in the Probate and Family Court. The wife was represented by Maryjo Hart (“Attorney Hart”), who was, at that time, employed by Hart Law Offices, P.C. (“HLO”).
While the divorce was pending, the husband’s mother, Mary Gerard (“the mother”), brought suit against the wife and the husband in Middlesex Superior Court, claiming that she had not been repaid for several loans that she had made to both the wife and the husband.[3] She obtained a real estate attachment against the husband and/or the wife in the amount of $650,000. She also received a real estate attachment against the husband for the same amount. The mother voluntarily dismissed the wife as a party to the proceedings on April 20, 2011. The husband did not contest the debt, and the mother obtained an execution against the husband for $756,030.95. The execution was levied and suspended on property that the husband and the wife owned, at that time, as tenants by the entirety (“the marital home”).
On or about March 28, 2011, Judge Monks in the Probate and Family Court issued a Judgment of Divorce Nisi. Judge Monks ordered that the husband and the wife sell the marital home and divide the proceeds equally. She also ordered the husband to pay the wife $195,187.00 for the wife’s interest in certain real estate belonging to the husband’s business, within ninely days of the order.
On September 28, 2011, Judge Monks held the husband in contempt for failing to pay the wife $195,187.00 within the required time period. In her Order for Contempt, Judge Monks ordered the husband to pay this amount to the wife from his share of the proceeds upon the sale of the marital home.
Judge Monks held the husband in contempt for the second time on December 27, 2011, for his failure to accept an offer to purchase the marital home in contravention of the Order for Divorce. At that time, Judge Monks appointed William Mayer to serve as Special Master (“the Special Master”), which included executing any and all documents necessary to carry out the sale of the marital home. Judge Monk ordered that the husband pay the Special Master’s “usual and customary hourly rate” from the husband’s share of the proceeds of the sale of the marital home.
In December 2011, third-party buyers agreed to purchase the marital home for $550,000. The Purchase and Sale Agreement called for a closing date of February 10, 2012.
In the days leading up to the February closing date, Attorney Hart e-mailed the mother’s counsel, Theresa Capobianco (“Attorney Capobianco”). Attorney Hart informed Attorney Capobianco that in her view the husband no longer had any equity in the property, because he was obligated to pay the wife $195,187.00 from his share of the sale proceeds per Judge Monks’ Order. Attorney Hart requested that the mother release her execution on the property, as it applied only to the husband’s interest. Attorney Hart stated that if the mother did not release the execution, there would be insufficient funds for the closing to go through. In addition to the mother’s execution, the marital home was encumbered with a mortgage, a real estate attachment against the husband by a creditor of his business, defendant Perkins Paper, Inc., and an attorney’s lien for $51,091.12 against the wife that HLO filed on March 15, 2011 for legal services Attorney Hart provided. If the closing did not go forward, the marital home was likely to be foreclosed upon the following month due to late mortgage payments.
Attorney Capobianco wrote in reply to Attorney Hart that the mother would not release the execution. Attorney Capobianco claimed that the mother’s execution had priority, and consequently the mother was entitled to the husband’s liquidated equity in the property, which amounted to about $45,000. Attorney Capobianco offered to release the execution in exchange for a check payable to the mother in that amount. No such check was issued.
On February 6, 2012, four days before the closing, Attorney Capobianco notified the Special Master, Attorney Hart, defendant Murray, Murray and Richards, P.C. (“MMR”), and defendant Brian Brown[4] that she would be out of town from February 9 to February 13. She stated that she would be available via e-mail and telephone.
*433 On February 10, 2012, the date of the closing, the Special Master appeared in the Probate and Family Court. He presented an Ex Parte Motion to Dissolve Attachments and Execution with Accompanying Affidavit (“Ex Parte Motion”), requesting that Judge Monks dissolve the mother’s attachments and execution on the property so that the sale of the marital home could go forward. Judge Monks issued an order declaring that the attachments and execution were dissolved and would have no force or effect.
Defendant Brian Brown conducted the closing transaction and dispersed all funds as follows: the Special Master received $1,917.50 in fees, HLO received $55,826.40 for the attorney’s lien,[5] George Richards[6] received $5,000 to hold in escrow for Perkins Paper, Inc., and the wife received $24,844.33 as her share of the equity. The mother brought the instant suit almost immediately thereafter, asserting claims for: fraud, deceit, and conspiracy; malicious interference with economic rights; monies had and received; unjust enrichment; monies on account/account annexed; reach and apply; injunctive relief; and violation of due process rights. HLO counterclaimed against the mother for abuse of process, alleging the mother’s Complaint was “baseless” and was brought against HLO “maliciously.”
, DISCUSSION
Strategic lawsuits against the public participation, or SLAPPs, are meritless suits in which the objective “is not to win them, but to use litigation to intimidate opponents’ exercise of rights of petitioning and speech.” Duracraft Corp. v. Holmes Prod. Corp., 427 Mass. 156, 161 (1998). The Massachusetts Legislature enacted G.L.c. 231, §59H, popularly known as the Anti-SLAPP Act (“the Act”), to provide “very broad protection for petitioning activities.” Duracraft Corp., 427 Mass. at 161-63.
The statute provides: “In any case in which a party asserts that the civil claims, counterclaims, or cross claims against the said parly are based on said party’s exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to. dismiss.” G.L.c. 231, §59H. “[A] party’s exercise of its right of petition” is defined as, inter alia, “any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding ...” Id.
Once a party brings a special motion to dismiss, there is a two-pronged test. First, the special movant must “make a threshold showing through the pleadings and affidavits that the claims against it are ‘based on’ the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Duracraft Corp., 427 Mass. at 167-68. If the special movant makes the threshold showing, the burden shifts to the non-movant to prove, by a preponderance of the evidence, that “(1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party’s acts caused actual injuiy to the responding party.” G.L.c. 231, §59H. See also Adams v. Whitman, 62 Mass.App.Ct. 850, 853 (2005) (noting preponderance of the evidence standard).
I. The Special Master’s Special Motion to Dismiss Pursuant to G.L.c. 231, §59H
The Special Master argues that the mother’s lawsuit is solely based on the Special Master’s filing of the Ex Parte Motion at the Probate and Family Court, which he claims constituted an “exercise of his right of petition” under the Act.
The Supreme Judicial Court has explicitly refused to expand the scope of the Act to those “not seeking from the government any form of redress for a grievance of [their] own or otherwise petitioning on [their] own behalf. . .” Kobrin v. Gastfriend, 443 Mass. 327, 330 (2005). The Court expressly limited the Act’s coverage to those parties, who, “in their status as citizens,” petition the government on their own behalf. Id. at 332. The Act does not apply to those “performing services for the government as contractors.” Id.
While the Special Master admits that he “acted in a court-appointed capacity to achieve ends ordered by the Middlesex Probate and Family Court[,]” he argues that his role should be viewed as more akin to an attorney for the husband or the wife than as a contractor for or employee of the Probate Court. See Plante v. Wiley, 63 Mass.App.Ct. 151, 157 (2005) (holding that “an attorney who is sued for voicing the positions of a petitioning client may bring a special motion to dismiss under the anti-SLAPP statute”). This comparison is simply not accurate. Neither the wife nor the husband hired the Special Master. If the Special Master acted in a way that coincided with the wife’s interests, that was because of the Probate Court’s orders, not because he acted for her in a representational capacity. While the Special Master had the ability to execute documents in the husband’s stead, he did not act as the husband’s agent, but rather as the instrument of the Probate Court to ensure that the Probate Court’s orders were carried out. See Fustolo v. Hollander, 455 Mass. 861, 868 (2010) (“By its nature, the attorney-client relationship is one in which the attorney expressly represents his or her client and serves as the client agent”). As an agent of the Probate Court, the Special Master had only “[a] mere contractual connection to the . . . [alleged] petitioning activity.” Kobrin, 443 Mass. at 338. He could not exercise his right of petition as a citizen while also acting as an agent of the government. See also Moriarity u. Mayor of Holyoke, 71 Mass.App.Ct. 442, 447 (2008) (holding that, since the defendants admitted, and indeed, ex *434 plicitly argued, that they were acting as agents of the city, they were “ [b]y their own admission” not acting on their own behalf or seeking redress for a grievance of their own as citizens).
The Special Master argues that he was petitioning the government on his own behalf because he sought to collect his fee, which was to be paid to him upon the sale of the marital home. A defendant’s motivation, however, “is not scrutinized during the threshold §59H inquiry as to whether the subject statements were petitioning activity.” Moriarty, 71 Mass.App.Ct. at 448 n. 12. See also Fisher v. Lint, 69 Mass.App.Ct. 360, 365 (2007), quoting Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002) (“Moreover, Lint is not assisted by his claim that his conduct was motivated in part by a personal interest because at this initial stage ‘the motive behind the petitioning activity is irrelevant’ ”).[7]
Since the Special Master did not engage in his right to petition the government as a citizen, but rather acted as a government agent, he did not meet his threshold burden under the Act as required by the first prong of the test. Therefore, the court need not reach the second prong.
II. Defendants Maiyjo Hart and Murray, Murray & Richard’s Special Motion to Dismiss Pursuant to G.L.c. 231, §59H
Attorney Hart and MMR argue that the mother’s claims against them should be dismissed under the Act. They claim that her “allegations are centered upon the actions of the Special Master and his dealings with the other Defendants in this action.” They cite paragraphs in the mother’s Verified Complaint referring to the Ex Parte Motion and communications between the parties regarding the closing. Attorney Hart and MMR do not allege that the mother is targeting any specific statements or filings they made on their own behalf or on behalf of their client, the wife.
To the extent that they rely on the Ex Parte Motion filed by the Special Master, they do not prevail. For the reasons listed above, the Special Master’s filing of the Ex Parte Motion did not constitute an exercise of his right to petition for the purposes of the Act.
To the extent that they claim the mother’s Verified Complaint relied on the entire Probate Court action, this argument also fails. The Verified Complaint patently does not rely on the Probate Court proceedings as a whole. Of the Verified Complaint’s eight counts, three counts — fraud, malicious interference with economic rights, and violation of due process rights— refer to the Special Master’s filing of the Ex Parte Motion. Again, the Ex Parte Motion is not “petitioning” under the Act.
Four counts in the Verified Complaint — monies had and received, unjust enrichment, monies on account, and reach and apply — center on the mother’s claim that the defendants wrongfully took money to which the mother was lawfully entitled. These four counts relate to conduct, not statements.[8] Under the Act, petitioning necessarily involves a “written or oral statement . . .” G.L.c. 231, §59H. “[A] party cannot exercise its right of petition without making a ‘statement’ designed ‘to influence, inform, or at the very least, reach governmental bodies — either directly or indirectly.’ ” Marabello v. Boston Bark Co., 463 Mass. 394, 398-99 (2012), quoting North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 862 (2009). “And a claim cannot be ‘based on’ a party’s exercise of its right to petition unless the claim is based on such a ‘statement.’ ” Id. See also Keystone Freight Corp. v. Bartlett Consolidated Corp., 77 Mass.App.Ct. 304, 311-12 (2010) (holding that Keystone’s claim was based on Bartlett’s alleged billing misconduct, not solely the filing of its collection action). Since the mother’s Verified Complaint is not based on oral or written statements, or any communicative conduct, Attorney Hart and MMR have not made their threshold showing that her claims are based on petitioning activity. As a result, the court does not reach the second prong of the test.
III. Plaintiffs Special Motion to Dismiss Defendant’s Counterclaim Pursuant to G.L.c. 231, §59H
The mother argues that HLO’s counterclaim against her for abuse of process is solely based on her protecting petitioning activities, namely, filing the Verified Complaint.
There is inherent tension between the Act and common-law abuse of process claims. “We must interpret and apply the anti-SLAPP statute and our case law in such a way as to continue to permit, where appropriate and consistent with the intent of §59H, claims of abuse of process as delineated by the Massachusetts common law.” Keystone, 77 Mass.App.Ct. at 313, citing Adams, 62 Mass.App.Ct. at 854-57 & n.9.
“The essential elements of the tort of abuse of process are ‘(1) ’’process" was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.’ “ Vittands v. Sudduth, 49 Mass.App.Ct. 401, 406 (2000), quoting Kelly v. Stop & Shop Cos., 26 Mass.App.Ct. 557, 558 (1988). See Adams, 62 Mass.App.Ct. at 853, citing Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 408 (2002) (“It is immaterial to an abuse of process claim that the process was properly issued, that it was obtained in connection with a proceeding brought with probable cause, or that the proceeding terminated in favor of its proponent”). ’’More specifically, abuse of process has been described as a ‘form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money.’ “ Vittands, 49 Mass.App.Ct. at 406, quoting Cohen v. Hurley, 20 Mass.App.Ct. 439, 442 (1985). ’’Thus, only the first test in the special motion protocol — whether the claim is solely ‘based on’ the *435 petitioning activity — has the potential to preserve a meritorious abuse of process claim where the process was properly issued and based on probable cause." Adams, 62 Mass.App.Ct. at 853-54.
With an abuse of process claim, therefore, courts have interpreted the Act to require that there be a showing of “conduct separate and independent from the petitioning activity” in order for the claim to survive the special motion to dismiss. Keystone, 77 Mass.App.Ct. at 314. “To hold that evidence of improper action, separate and distinct from the exercise of petitioning activity, is necessary as a threshold requirement simply means that attribution of a motive, alone, is never sufficient.” Id.
HLO has not alleged any other conduct apart from mother’s petitioning activity, i.e., filing suit and conducting discoveiy. The firm’s allegations instead focus exclusively on the mother’s motives in filing suit. As noted above, that is insufficient. The mother has met her threshold burden of showing that the counterclaim is solely based on her petitioning activities. The burden shifts to HLO to show that the mother’s Verified Complaint is devoid of any reasonable factual support or arguable basis in law. G.L.c. 231, §59H. HLO is unable to meet this burden. HLO admits that it obtained an attorney’s lien on the marital home for over $51,091.52 and, after the closing, deposited a check for $55,826.40 into its operating account. What HLO did with the funds after that point is a question of fact. The mother is not forbidden from suing HLO simply because HLO claims it transferred the funds to Attorney Hart. Accordingly, it cannot be said that the mother’s complaint against HLO is devoid of factual support or an arguable basis in law.
ORDER
For the foregoing reasons, it is hereby ORDERED:
that defendant William Mayer’s special motion to dismiss pursuant to G.L.c. 231, §59H be DENIED;
that defendants Maryjo Hart and Murray, Murray & Richards, P.C.’s special motion to dismiss pursuant to G.L.c. 231, §59H be DENIED;
that plaintiff/defendant-in-counterclaim Mary Gerard’s special motion to dismiss pursuant to G.L.c. 231, §59H be ALLOWED;
and that plaintiff/defendant-in-counterclaim Mary Gerard’s request for attorneys fees and costs for defending the defendant/plaintiff-in-counterclaim Hart Law Offices, P.C.’s counterclaim be ALLOWED pursuant to G.L.c. 231, §59H.

 James Richards of Murray, Murray & Richards, P.C., represented the wife in these proceedings. It appears that James Richards also represented the wife at the Probate Court proceedings, along with Attorney Hart. James Richards is not a named defendant in the instant case. See also note 6, infra.

 Brian Brown was apparently the buyers’ attorney and the closing attorney.

 HLO asserts it merely deposited the check in its operating account and, once the funds cleared, transferred the funds immediately to Attorney Hart, who, by the time of the closing, no longer worked for HLO.

 Defendant George Richards appears to have acted as the wife’s real estate counsel. He does not work for MMR.

 Even if motive were considered, his motive in this case would not help him. See Fustolo v. Hollander, 455 Mass. 861, 870 n.11 (2010) (“While not determinative, a commercial motive may provide evidence that particular statements do not constitute petitioning activity”). (Emphasis omitted.) To the extent that the Special Master argues that he was motivated by a desire to maintain business relationships at the Probate Court, not only a desire for his fee, such a motivation is indistinguishable from any contractor’s or employee’s desire to perform well in the eyes of his superiors and peers. Certainly, the psychiatrist in Kobrin would have had the same motivations. This would not change the fact that the Special Master was not petitioning in his “status as [a] citizen!].” Kobrin, 443 Mass. at 332.

 The remaining count was a request for injunctive relief, which was denied by this court on February 21, 2012.