The defendants appeal from an order denying their special motions to dismiss pursuant to G. L. c. 231, § 59H. The defendants argue that the judge erred in ruling that the plaintiff's claims are not based solely on the defendants' petitioning activity. The defendants also argue that the judge erred in finding that the plaintiff had demonstrated, by a preponderance of the evidence, that the defendants' petitioning activities were devoid of any reasonable factual support or arguable basis in the law. We vacate the portion of the order denying the special motions to dismiss and remand for additional discovery for the reasons discussed below.
Background. "We summarize the relevant facts from the pleadings and affidavits that were before the motion judge." 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 164 (2017) (Harrison ).
The defendant, Michael Astrofsky, is the father of a three year old child. The defendant, Denise Woolf is Astrofsky's mother and the paternal grandmother of the child. The plaintiff, James Nicholson, is the stepfather of the child's mother and the child's maternal stepgrandfather.[3]
Woolf took care of the child during the late summer of 2014. While the child was in her care, Woolf alleges that the child told her that the plaintiff liked to "smell her bum" and that "it tickles when he smells it all the time." Woolf discussed the child's alleged statements with her coworker, Samantha Edwards, at the Law Office of George Miller and asked Edwards what she should do. She also told her employer, Attorney George Miller, about these alleged statements and sought advice on the steps she should take.[4] This discussion was not pursuant to an attorney-client relationship.[5] ,[6] Woolf further discussed the child's alleged statements with her family therapist, Julia Swartz, during a regularly scheduled therapy session and inquired as to what she should do.
Five days after the child's alleged initial statements, Woolf claims that when she attempted to dry off the child after a bath, she noticed that the child was resisting opening her legs to be dried off. The child allegedly stated that she did not want to open her legs because "it hurt." When Woolf asked the child why she was in pain, the child allegedly explained that the plaintiff "bumped her" five times each in the front and the back, pointing between her legs and to her backside.
Woolf called the police and informed them of the child's statements. Woolf and Astrofsky then took the child to a hospital.[7] There, the defendants ordered a "rape kit" examination be performed without the knowledge or consent of the child's mother.[8]
The hospital ultimately turned the matter over to the Department of Children and Families (DCF). Following an investigation, DCF found no merit to the defendants' allegations. The hospital also found no signs of abuse after conducting the rape kit. Nonetheless, Astrofsky moved to reverse an order by a judge of the Probate and Family Court, which had temporarily granted the child's mother full legal and physical custody, and requested that he be granted full custody of the child. Subsequent to a hearing, the probate judge denied the request, further limited Astrofsky's visitation, and prohibited Woolf from seeing or interacting with the child in any manner.
The plaintiff then commenced this action against the defendants, alleging that Woolf and Astrofsky falsely accused him of sexual assault of the child in an effort to defame and inflict emotional distress upon him, and to secure custody of the child.[9] The defendants each brought a special motion to dismiss the plaintiff's complaint, pursuant to the Massachusetts anti-SLAPP statute, G. L. c. 231, § 59H. The judge denied the defendants' motions.
Discussion. A party may file a special motion to dismiss under the anti-SLAPP statute[10] if "the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth." G. L. c. 231, § 59H. This is a "procedural remedy for early dismissal of ... lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Harrison, 477 Mass. at 167, quoting from Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161 (1998).
"To prevail on this motion, the burden falls first on the special movant, here the defendants, to 'make a threshold showing through pleadings and affidavits that the claims against it "are 'based on' [its] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." ' " Harrison, 477 Mass. at 168, quoting from Blanchard v. Steward Carney Hosp. Inc., 477 Mass. 141, 147 (2017) (other quotation omitted). If the special movant makes such a showing, "the burden [then] shifts to the nonmoving party, here the plaintiff, to defeat the special motion to dismiss." Ibid. The recently augmented Duracraft framework, as described in Blanchard, supra, now provides two ways in which the plaintiff may satisfy his burden. First, the plaintiff may show "by a preponderance of the evidence that the [defendants] lacked any reasonable factual support or any arguable basis in law for its petitioning activity, ... and that the ... defendants' sham petitioning activity caused the plaintiff ... actual injury." Id. at 148 (quotations omitted). "If the nonmoving party cannot make this showing, it may then attempt to meet its burden ... by showing that its claim was not 'brought primarily to chill,' ... the special movant's legitimate petitioning activities but rather 'to seek damages for the personal harm to [it] from [the] defendants' alleged ... [legally transgressive] acts.' " Harrison, supra, quoting from Blanchard, supra.
1. Petitioning activity. As part of their threshold burden, the defendants must demonstrate that the conduct complained of by the plaintiff is "solely'based on' " the defendants' petitioning activities. Duracraft, 427 Mass. at 165. Since "[a] special movant's motivation for engaging in petitioning activity does not factor into whether [the defendants] ha[ve] met [their] threshold burden, ... the key inquiry here is whether 'the only conduct complained of is ... petitioning activity.' " Harrison, 477 Mass. at 168, quoting from Fabre v. Walton, 436 Mass. 517, 524 (2002).
The plaintiff's claims against the defendants are based on three types of activities: (1) statements made by Woolf to three nongovernmental third parties; (2) a report filed with the police by Woolf, allegedly falsely accusing the plaintiff of sexual assault; and (3) Woolf's and Astrofsky's[11] actions of taking the child to a hospital, subjecting the child to an invasive rape kit, and making false statements to hospital staff accusing the plaintiff of sexual assault. We discuss each in turn. See, e.g., Blanchard, 477 Mass. at 149-153 (determining whether each ground supporting plaintiff's single count of defamation satisfies first stage of the anti-SLAPP analysis).
a. Statements made to nongovernmental third parties. Woolf argues that the plaintiff's claims pertaining to statements that she made to three nongovernmental third parties about the child's alleged initial declarations of sexual assault are solely based on petitioning activity. We disagree.
In this case, Woolf's statements provided "a substantial nonpetitioning basis for [the plaintiff's] claim[s]." Harrison, 477 Mass. at 169. After the child allegedly made initial statements disclosing sexual assault, Woolf discussed these statements with her coworker, employer, and family therapist. Despite the defendants' contentions, Woolf's statements to these three nongovernmental third parties were "separate and independent from [the defendants'] petitioning activity."[12] Keystone Freight Corp. v. Bartlett Consol., Inc., 77 Mass. App. Ct. 304, 314 (2010).
Here, the defendants have not shown that these statements would have reasonably reached governmental authorities. See Blanchard, 477 Mass. at 152, quoting from Plante v. Wylie, 63 Mass. App. Ct. 151, 159 (2005) ("It stands to reason that statements cannot be 'in furtherance of' petitioning the government if they are not reasonably geared to reaching it"). Indeed, these statements were made prior to Woolf's report to the police and prior to DCF's knowledge of the case.[13] See Keystone, 77 Mass. App. Ct. at 316. Moreover, the record demonstrates that it was not until the child allegedly made further statements to Woolf, which occurred days after Woolf's conversations with these three nongovernmental third parties, that Woolf began her petitioning activity and reported these alleged statements to the police. See North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 862 (2009) ("In order to determine if statements are petitioning, we consider them in the over-all context in which they were made"). See also Global Naps, Inc. v. Verizon New England, Inc., 63 Mass. App. Ct. 600, 606-607 (2005) ("An examination of the materials supporting [defendant's] motion does not indicate that [its conduct] had the potential or intent to redress a grievance, or directly or indirectly to influence, inform, or bring about governmental consideration of the issue").
Therefore, Woolf's statements to her coworker, employer, and therapist were not petitioning activity, and the plaintiff's claims were based on a "substantial nonpetitioning basis." Harrison, 477 Mass. at 169. Accordingly, the judge properly denied the defendants' special motion to dismiss on this ground. See Blanchard, 477 Mass. at 155 ("Where, as here, the claim structured as a single count readily could have been pleaded as separate counts, a special movant can meet its threshold burden with respect to the portion of that count based on petitioning activity" [emphasis added] ); Harrison, supra at 172 (affirming judge's denial of special motion to dismiss as to plaintiff's G. L. c. 93A claim).
b. Report to the police. It is clear that Woolf's reporting of the child's alleged statements to the police, on the other hand, is petitioning activity. See O'Gara v. St. Germain, 91 Mass. App. Ct. 490, 497 (2017) ("When a person reports suspected criminal activity to the police, she is engaging in constitutionally-based petitioning activity for purposes of G. L. c. 231, § 59H"). See also Benoit v. Frederickson, 454 Mass. 148, 153 (2009) ; Keegan v. Pellerin, 76 Mass. App. Ct. 186, 190 (2010). Therefore, the defendants have met their initial burden as to this ground.
c. Statements made to hospital staff. The plaintiff also bases his claims on the defendants' activities of bringing the child to a hospital and allegedly making false statements to hospital staff, accusing the plaintiff of sexual assault.[14]
Under the anti-SLAPP statute, the definition of petitioning activity includes "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding." G. L. c. 231, § 59H. To satisfy the "in connection with" definition of petitioning, "a communication must be 'made to influence, inform, or at the very least, reach governmental bodies-either directly or indirectly.' " Blanchard, 477 Mass. at 149, quoting from North Am. Expositions Ltd. Partnership, 452 Mass. at 862. "The key requirement of this definition of petitioning is the establishment of a plausible nexus between the statement and the governmental proceeding." Ibid. A plausible nexus may be shown by "objective indicia of a party's intent to influence a governmental proceeding." Ibid.
Here, the plaintiff claims in his complaint and affidavit that after Woolf filed a report with the police, the defendants took the child to a hospital and made statements to hospital staff falsely accusing the plaintiff of sexual assault. The defendants have demonstrated their "intent to influence a governmental proceeding" through their statements to hospital staff that are "closely and rationally related to the [report that Woolf made to the police]" and "in furtherance of the objective served by governmental consideration of the issue under review." Plante, 63 Mass. App. Ct. at 159. Even as the plaintiff acknowledges in his complaint, hospital personnel are mandated, under G. L. c. 119, § 51A, to report suspected child abuse to DCF. Indeed, the matter was ultimately turned over to DCF by the hospital. Thus, the defendants' statements "were issued in a manner that was likely to influence or, at the very least, reach a [government body]." Blanchard, 477 Mass. at 151.
Therefore, we conclude that while Woolf's statements to three nongovernmental third parties were not an exercise of the defendants' right of petition, the defendants' report to the police and statements made to hospital staff were petitioning activity. We therefore proceed to the second stage of the anti-SLAPP analysis as to these latter two grounds. See, e.g., Harrison, 477 Mass. at 171 (proceeding to stage two of Duracraft analysis only in regard to defendants' petitioning activity).
2. The plaintiff's second-stage burden. There are two ways in which the plaintiff may satisfy his burden at the second stage of the anti-SLAPP analysis. First, the plaintiff may demonstrate that "by a preponderance of the evidence, that the defendants' petitioning activity ... lacked any reasonable factual support or arguable basis in law, and caused [the plaintiff] actual injury." Harrison, 377 Mass. at 172 (citations omitted; quotations omitted).[15] Second, "[i]f [the plaintiff] cannot make this showing, [he] may now also prevail by establishing to the judge's fair assurance that [his] abuse of process claim is not a 'SLAPP' suit under the augmented Duracraft framework." Id. at 172-173. We conclude that further discovery is required in this case to resolve questions that are critical to the analysis of whether the plaintiff has met his initial burden at the second stage.
Pursuant to G. L. c. 231, § 59H, "[a]ll discovery proceedings shall be stayed upon the filing of the special motion [to dismiss]." However, the statute "also explicitly permits 'specified discovery' when ordered by the judge for 'good cause shown.' " Benoit, 454 Mass. at 157 (Cordy, J., concurring), quoting from G. L. c. 231, § 59H.
Here, we are presented with a case that requires the exercise of judicial discretion to order further discovery, as permitted under the anti-SLAPP statute, before making a determination whether the plaintiff has met his second stage burden to defeat the defendants' special motion to dismiss as it relates to their petitioning activity. See Blanchard, 477 Mass. at 159 ("As a practical matter, the expedited special motion to dismiss will proceed as follows, still ... taking place early in the litigation and with limited discovery available only by leave of court" [emphasis added] ). See also Benoit, 454 Mass. at 157-158 (Cordy, J., concurring) ("In these circumstances, judges may, as the statute expressly permits, authorize specific discovery on the particulars of the facts that are alleged to have supported the underlying petitioning activity, in order to test the veracity of those facts").
In this case, the parties have submitted contradictory pleadings and affidavits on questions critical to the second stage of the anti-SLAPP analysis. First, Woolf alleges that the police directed her to bring the child to the hospital. The plaintiff, on the other hand, alleges that the defendants took the minor child to multiple hospitals in an effort to generate false reports of abuse. Second, Woolf claims that the child repeated the statements of abuse to a nurse at a hospital. The plaintiff claims the contrary, stating that Woolf created these false allegations and that she made these false statements of abuse to the police, DCF, and the hospital. Moreover, the plaintiff does not simply support his claims "merely by presenting affidavits contradicting the factual basis of the [defendants'] petitioning activities." Harrison, 477 Mass. at 173. The plaintiff's claims are also supported by several other allegations, including: that the defendants generated these false reports two months after the child's mother had obtained an abuse prevention order against Astrofsky and after the probate judge had temporarily granted the mother full custody of the child; that the defendants filed a motion with the Probate and Family Court to reverse the child custody order shortly after their visit to the hospital; that DCF ultimately found no merit in Woolf's allegations against the plaintiff and suspended their investigation; and that the probate judge rejected the defendants' motion and entered an order prohibiting Woolf from having any contact with the child and further limiting Astrofsky's visitation with the child.[16]
If the plaintiff's statements are found credible, the plaintiff will have established, by a preponderance of the evidence, that the defendants' actions of calling the police and bringing the child to multiple hospitals were "devoid of any reasonable factual basis," and therefore the plaintiff will have satisfied his burden under the second prong of the augmented Duracraft analysis. However, if Woolf's statements in her affidavits are found credible, the defendants will have protection under the anti-SLAPP statute. In light of these credibility issues, we conclude that this case presents appropriate circumstances in which further discovery is necessary before a ruling can be made on the defendants' motion.[17] See Keegan, 76 Mass. App. Ct. at 189 ("Accordingly, factual conflicts at the motion stage require resolution, on some occasions after discovery ..."). See also Benoit, 454 Mass. at 156-158 (Cordy, J., concurring).
We have already determined that the plaintiff has defeated the special motion to dismiss as it relates to publication of potentially defamatory content to the three private parties. We agree with the Superior Court judge that this was not petitioning activity. However, the judge must still determine if the special motion to dismiss may be defeated regarding the defendant's petitioning activity. Additional discovery is necessary to make this determination.
"Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 628 (2012), quoting from Draghetti v. Chmielewski, 416 Mass. 808, 8012 (1994). The tort of defamation, regarding a private citizen, does not require intentional conduct. "Assuming the other elements of defamation are present, the publication of a false statement about a private party is equally tortious whether it is made intentionally, recklessly, or negligently." Id. at 628-629.
"Defamation is essentially spoken or written words or expressions that injure reputation." Id. at 628. The tort of defamation is not inconsistent, however, with a person's right to petition activity. We recognize that, on certain occasions and for certain purposes, the valid exercise of the constitutional rights of free speech and petition for redress of grievances outweighs the interest in protecting reputation. See, e.g., Restatement (Second) of Torts ch. 25, topic 3 scope note, at 258. "Statements," for example "made by public officials while performing their official duties are conditionally privileged.... The threat of defamation suits may deter public officials from complying with their official duties when those duties include the need to make statements on important public issues." Mulgrew v. Taunton, 410 Mass. 631, 635 (1991). Similarly, the anti-SLAPP statute provides a procedural remedy for early dismissal of law suits "brought primarily to chill the valid exercise of the constitutional rights of free speech and petition for the redress of grievances." Duracraft, 427 Mass. at 161 (quotation omitted).
In the context of "defamation," a conditional privilege can be abused and lost in a number of different ways. Bratt v. International Bus. Machs. Corp., 392 Mass. 508, 514 (1984). "One manner of such abuse is publication with knowledge of falsity or with reckless disregard of the truth." Tosti v. Ayik, 386 Mass. 721, 726 (1982). Loss of privilege can also be based on "unnecessary, unreasonable or excessive publication," if it can be proved "that the defendant acted recklessly." Bratt, supra. "Finally a conditional privilege is abused and lost when it is determined that the defendant has acted with actual malice." Barrows, 82 Mass. App. Ct. at 631.
The determination of loss of privilege, related to a defamation claim, is similar to the burden that the plaintiff has here to defeat the special motion to dismiss available to the defendants exercising their right to petition. He can meet that burden in either of two ways. The plaintiff may "establish 'by a preponderance of the evidence that the special movant lacked any reasonable factual support or any arguable basis in law for its petitioning activity,' ... i.e., that its petitioning activity is illegitimate." Harrison, 477 Mass. at 168. If the plaintiff here is unable to meet that burden he may still defeat the special motion to dismiss within the augmented Duracraft framework "by showing that its claim was not brought primarily to chill, ... the special movant's legitimate petitioning activities but rather to seek damages for the personal harm to [it] from [the] defendant's alleged ... [legally transgressive] acts." Ibid.
Therefore, we vacate the portion of the order denying the special motions to dismiss and remand the case for additional discovery as to, at least: (1) Woolf's allegations that the police directed her to bring the child to the hospital or multiple hospitals; (2) Woolf's claims that the child repeated the alleged statements of abuse to hospital staff; and (3) the factual basis for the police not pursuing the report of sexual assault, DCF dropping its investigation, and the probate judge apparently sanctioning the defendants for this activity. Subsequent to further discovery, the plaintiff will bear the burden of demonstrating that the defendants' petitioning activities were "devoid of any reasonable factual support." G. L. c. 231, § 59H. The plaintiff will, upon remand, have the opportunity to show that his claims against the defendants' petitioning activity "do not give rise to a 'SLAPP' suit" and were "not primarily brought to chill the special movant's legitimate petitioning activities." Blanchard, 477 Mass. at 160.[18]
So ordered.
Vacated in part; remanded.

The child and her mother began living with the plaintiff and the plaintiff's wife (the child's maternal grandmother) after Astrofsky became physically and emotionally abusive toward the child's mother.

Woolf states in her affidavit that she "spoke with Attorney Miller and Ms. Edwards because [Woolf] was struggling with the issue and [she] did not want to wrongfully accuse anybody of anything."

As the judge properly noted, Woolf has the burden of proving any claims of privilege. See Humphrey v. National Semiconductor Corp., 18 Mass. App. Ct. 132, 133-134 (1984).

The plaintiff alleges in his complaint that Woolf was a former day care owner and thus was a mandated reporter under G. L. c. 119, § 21, and was familiar with the mandated reporter guidelines.

Woolf stated in her affidavit that the police directed her to take the child to the hospital.

The child's mother had temporary full legal custody of the child at this time.

The plaintiff supports his claims against Astrofsky by alleging that Astrofsky has acted as a joint venturer with Woolf. As the judge here properly noted, the plaintiff's claims "are based on Astrofsky's role in bringing the [c]hild to the hospital where a rape kit was performed and in causing false filings with DCF."

"SLAPP is an acronym for 'strategic litigation against public participation.' " Cadle Co. v. Schlichtmann, 448 Mass. 242, 242 n.2 (2007).

The plaintiff's allegations against Astrofsky are based on his activity as a joint venturer.

While Woolf claims that she discussed the child's statements with her coworker, employer, and therapist to seek advice on what she should do, the plaintiff's complaint alleges that Woolf was once a mandated reporter pursuant to G. L. c. 119, § 21, and therefore already knew the necessary steps to take in response to the child's alleged comments.

Compare Kalter v. Wood, 67 Mass. App. Ct. 584, 588 (2006) ( "[Defendant's] letter to [insurer] was not made in connection with an issue under review by the ... police or the Division of Professional Licensure. Indeed, there was no pending governmental investigation ..."), and Wynne v. Creigle, 63 Mass. App. Ct. 246, 254 (2005) ("[Statements] were essentially mirror images of those she made during and 'in connection with' the departmental investigation of the plaintiff" [emphasis added] ).

As addressed later in our analysis, the plaintiff presented evidence in his affidavit and at the hearing on the special motion to dismiss hearing that the defendants brought the child to multiple hospitals. Woolf's affidavit, on the other hand, contradicts this assertion. While we agree with the plaintiff that the defendants' actions of bringing the child to multiple hospitals may be an influential factor to the outcome of this case in the second prong of the Duracraft analysis, this factual disparity is not determinative at the first stage. See Blanchard, 477 Mass. at 151 ("Ulterior motives, in any event, do not bear on the petitioning nature of the statements ..."). See also Harrison, 477 Mass. at 170, quoting from Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002) ("[F]ocus in initial stage of anti-SLAPP inquiry is 'on the conduct complained of, and, if the only conduct complained of is petitioning activity, then there can be no other "substantial basis" for the claim' regardless of the 'motive behind [the] petitioning activity' "). Here, we conclude that the plaintiff's claims, alleging that the defendants took the child to a particular hospital and made statements to hospital staff, are complaints of petitioning activity. Since we do not consider the "motive behind [the defendants'] petitioning activity" at this initial stage of the anti-SLAPP analysis, our conclusion at this stage is the same whether or not the defendants took the child to one hospital or multiple hospitals. Ibid.

The Supreme Judicial Court has recently addressed "two relevant considerations in determining whether this little-discussed second-stage burden has been met." Harrison, 377 Mass. at 173. "First, a plaintiff cannot meet its burden merely by presenting affidavits contradicting the factual basis of the special movant's petitioning activities, ... or demonstrating that the petitioning activities were unsuccessful." Ibid. "The critical determination is not whether the petitioning activity in question will be successful, but whether it contains any reasonable factual or legal merit at all." Wenger v. Aceto, 451 Mass. 1, 7 (2008). "Second, the defendants' motivation for engaging in petitioning activity does not factor into whether their petitioning activity is illegitimate." Harrison, supra. Instead, "the relevant inquiry is whether the plaintiff has demonstrated that the defendants' petitioning activity lacks an objectively reasonable basis." Ibid.

The plaintiff also argues that the probate judge's order "was influenced at least partially by a sealed report by DCF with respect to [its] investigation."

Compare Fabre v. Walton, 436 Mass. at 524 (defendants provided "conclusive evidence that the petitioning activity was not devoid of any reasonable factual support"); Benoit, 454 Mass. at 153 n.7 (concluding that plaintiff failed to satisfy second-stage burden where moving parties provided "evidence that, if believed, would support a finding in [their] favor"); Van Liew v. Stansfield, 474 Mass. 31, 40 (2016) (affirming denial of defendant's special motion to dismiss where "[i]t was clear from the text of [defendant's] complaint" in prior action that there was "no valid basis" for relief requested in that complaint); Harrison, 477 Mass. at 174 ("The combination of the lack of probable cause finding and the Superior Court order supplies the requisite preponderance of the evidence in favor of the conclusion that the criminal complaint lacked any reasonable basis in fact or law").

Similar to determining the abuse and loss of the conditional immunity of a public official in the context of a defamation claim, "[a] finding by the judge that a plaintiff has met his burden and the case can go forward is ... not a judgment on the merits of the claim, but rather an evaluation whether the defendant's prior petitioning activity falls within the protection of the anti-SLAPP statute." Benoit, 454 Mass. at 158 n.3. The special motion to dismiss presents a question of law separate and distinct from, even if somewhat related to, the plaintiff's underlying tort claim.
This process protects the plaintiff's right to a jury trial under art. 15 of the Massachusetts Declaration of Rights. See Stonehill College v. Massachusetts Commn. Against Discrimination, 441 Mass. 549, 577-578 (2004) (Sosman, J., concurring). See also HipSaver, Inc. v. Kiel, 464 Mass. 517, 523 n.7 (2013) (noting common law of defamation). "The right to a jury trial does not grant to a party the right to put to a jury any question he or she wishes.... The right attaches only to questions of fact material to the merits of a party's [underlying] claim." Harrison, 477 Mass. at 176 n.15 (quotation omitted).